# CONTRACT OF EMPLOYMENT

The Employer and the Employee, named below, have agreed on the following terms of employment set forth in this Contract of Employment ("Contract").

| | |
|---|---|
| The Employer: | **HansaWorld USA, Inc.**<br>Company Reg No: 3109650<br>Address: 1801 Shattuck Ave #2-404<br>Berkeley, CA 94709, USA<br>(hereinafter "the Company") |
| The Employee: | **Kim Davenport**<br>Passport number: 450862548<br>Address: 2820 Majestic Isle Dr.,<br>Clermont, FL 34711, USA<br>(hereinafter "the Employee") |

### 1. Term of Employment. At Will Employment

1.1 The Employee's employment with the Company referenced herein begins on **01 January 2011**.

1.2 The period of employment with the Company is counted from 25 May 2009.

1.3 The terms of this Contract are effective from 01 January 2011. This Contract replaces any previous Contract of Employment that the Employee has with the Company or any other company in HansaWorld group of companies.

1.4 There is no fixed date for termination of this employment contract. The Company and the Employee confirm and recognize that this is an "at will" relationship. Either party may terminate the relationship and the employment with or without notice for any reason whatsoever. The Employee acknowledges and agrees that any termination of his or her employment is not required to be for good cause only.

1.5 Upon the termination of this Contract, or at any other time if so requested by the Company, the Employee shall immediately return to the Company all information, material or property, tangible or intangible, (including, but not limited to, computer disks, flash drives, correspondence, printouts, manuals, reports, letters, memos, plans, diagrams, security cards, keys, programs, laptop computers, proposals and any documents and copies concerning the Company's customers or products or processes used by the Company) either belonging to or under the Contract or responsibility of the Company, and including all copies of that material, which are in the Employee's possession or under his/her control.

### 2. Place of Work

2.1 The Employee's place of work is the Company's office in **Hattiesburg, USA.**

2.2 The Employee's duties require the Employee to travel both nationally and internationally on a regular basis.

### 3. Work description

3.1 The Employee's job title is **Sales Manager of USA/Canada.**

3.2 The Employee's primary responsibilities relate to sales to new and existing customers, following the routines and methodologies but in place by the Company. The responsibilities of the Employee include but are not limited to maintaining high sales activity level, building pipeline, driving sales process (from quotation to closing), meeting sales targets and learning HansaWorld software. The Employee is also expected to fulfill other tasks which arise from the character of the work or during the general course of the work or that are from time to time directed by the Company's or its Headquarters' management.



Page 1 of 4

US Contract

3.3 The Employee will report to and work under the direction and supervision of the US Country Manager (Stefan Saxberg) but must expect to receive direction from time to time from other members of the Company or its Headquarters' management.

## 4. Remuneration

4.1 Agreed basic salary is **5 000 USD (five thousand US dollars)** per month gross, subject to the required and elected withholding.

4.2 Any bonuses or commissions are covered under separate agreement(s). Bonuses are not part of the Employee's basic salary and will not be taken into account when calculating the Employee's holiday salary or any other payments to be made to the Employee (e.g. payments upon the termination of the Employee's employment), unless it is otherwise required by the laws of the jurisdiction that apply to the Employee's employment with the Company.

4.3 The Company will reimburse reasonable and actual documented business expenses incurred by the Employee in the course of the Employee's duties provided that these have been previously authorized by the Employee's superior. Employee is required to adhere to Company policy regarding the procedures for submitting expense reports and the payment of expense claims.

4.4 Payment of salary, subject to deduction of taxes, insurance fees (if agreed or applicable) and any sums owed to the Company by the Employee, will be made once a month, normally around the 25th date of each month.

## 5. Working hours

5.1 The Employee's aggregate work time is 160 hours per month, mostly during normal office hours.

5.2 From time to time the Company's business necessitates work outside office hours and during weekends. The Employee hereby agrees to such work. Such work will be compensated with free time during office hours (compensation leave).

5.3 Overtime (defined as more than 160 hours per month) is voluntary and will not be compensated other than according to company policy - with free time. Any overtime needs to be agreed in writing with the Company prior to the Employee's working that overtime period. The Employee is exempt from a premium overtime pay rate under the outside sales employee exemption of local and federal labor laws.

## 6. Work in a foreign state

6.1 In case the Employee is required by the Company to work in any other state, notwithstanding the duration of the work, the Company will organize accommodation and food for the Employee as well as transportation to and from the other state or will cover the respective costs and/or pay daily allowances in accordance with internal company policies.

6.2 For the work performed in a foreign state, the Employee is paid remuneration in US dollars in accordance with the terms of paragraph 5 of this Contract. If needed and requested in accord with Company policy, the Employee is entitled to advance payment to cover the travel expenses. Requirements for documenting actual and reasonable travel expenses apply to advancements as well as reimbursements.

6.3 Other conditions that the parties wish to agree in addition to or different from the above or that the contract of employment must include according to local law or regulation may be added with the consent and acknowledgement of the Company.

## 7. Holidays

The Employee is entitled to 4 weeks paid holiday per annum of which not more than two consecutive weeks may be taken at a single time. The Employee's entitlement shall accrue on a pro-rata basis during each month of their employment from the first day of their employment. The dates and length of holiday periods taken must be agreed in advance by the Employee's supervisor.

### 8. Policies

The Company has a number of policies regarding work practices with which the Employee is expected to become familiar and to follow. Details of the policies are available at the work location or from the Office Manager.

### 9. Customer Contacts

Contacts concluded with customers during the employment, including identity of customers, are the property and remain the property of the Company even after termination of employment. All customer lists and notes about customers must be returned to the Company when requested and upon termination of Employment.

### 10. Confidentiality

10.1 The Employee is required to keep the Company's affairs and any information relating to the affairs of its staff and customers strictly confidential. The Employee will not at any time or in any manner, either directly or indirectly, use for the personal benefit of the Employee, or divulge, disclose, or communicate in any manner, any information that is proprietary to the Company. The Employee will protect such information and treat it as strictly confidential. Upon termination of this Contract, the Employee will return to the Company all records, notes, documentation and other items that were used, created, or controlled by the Employee during the term of this Contract.

10.2 These confidentiality obligations continue after the termination of the employment relationship. The Employee's duty to hold Confidential Information in confidence shall remain in effect until the Confidential Information no longer qualifies as a confidential or trade secret as defined by the Company or until the Company sends the Employee written notice releasing the Employee from this Contract, whichever occurs first. The decision that Confidential Information is no longer confidential or trade secret may not be made by the Employee unilaterally, but must be determined in consultation with the Company.

10.3 After the termination of the employment relationship, the Employee is specifically not allowed in any way to use or make available to third parties:
a) HansaWorld customer database or any data from it,
b) any data that belongs to HansaWorld customers,
c) any HAL code, or
d) any other HansaWorld code, HansaWorld product or internet services code
that has become known to the Employee during the course of the Employee's employment relationship, unless otherwise agreed with the Company in writing. This list is not meant to be limiting or all-inclusive.

### 11. Copyright

The Company owns and controls the copyrights and related rights in everything the Employee produces/creates during the course of her/his employment. Any creative work that does not relate to the business of the Company, either existing or near future business, is not covered by this clause.

### 12. Work For Hire

12.1 At all times, the Company will own all rights, title and interest in and to the Work Product of the Employee, including, without limitation, all copyrights, patents, trade secrets and other intellectual property rights, whether in the United States or abroad subject to its agreements which may be confidential, with third parties and clients. The Employee acknowledges that the Work Product is being specifically ordered by the Company by the Employee who is acting as an employee in an employer-employee relationship with the Company. Therefore, the work relationship is Work for Hire and the Company shall be free to register itself as author and copyright owner thereof and/or to contract with any third party for the third party to be deemed author of the Work Product and copyright owner of the Work Product. At no time shall the Employee hold any ownership or other interest in the rights to the Work Product, its preparation or the materials provided for inclusion in or preparation of the Work Product.

12.2 To the extent (if at all) that any rights in the Work Product, the underlying materials comprised therein or the products of the Services arise, or would, but for this paragraph arise in the Employee, such rights (including, but not limited to, copyrights, patents, trade secrets and any other intellectual property rights at all stages of the work assignment) are hereby assigned (such assignment to take effect so far as appropriate by way of present assignment of future copyright or other right) to the Company and/or its designated clients or other designees throughout the universe, in perpetuity, in any and all media, whether now or hereafter known or created, free from all restrictions and limitations, together with the rights generally known as "moral rights of authors" (which to the extent such "moral rights of authors" may not be granted are hereby expressly waived).

## 13. Training

13.1 The Employee is responsible for maintaining his/her professional skills on his/her own private time.

13.2 The Company will be offering regular Internal Trainings on various topics such as sales, software, consulting, programming, management, etc. Participating, as a student or teacher, in these trainings will be considered voluntary and not work time, unless the Employee is specifically ordered to attend.

## 14. Other

14.1 This is a personal contract which must be performed by the individual named herein as the Employee and, as such, performance hereof may not be assigned by the Employee to any other person. The Company retains the power to assign or transfer its rights under this Contract.

14.2 This Contract may be modified or superseded only upon the written and signed agreement of the parties.

14.3 The Employee acknowledges that he has had an adequate opportunity to read and study this Contract, to consider it and to consult with attorneys if he has so desired.

14.4 It is intended that this Contract be valid and enforceable under the laws of New York, and that the laws of this state shall govern the Contract's interpretation.

14.5 A failure of either party to insist on strict compliance with any provisions of the terms, covenants or conditions of this Contract by the other party shall not be deemed a waiver of that term, covenant, or condition.

14.6 This Contract supersedes any and all other agreements, either oral or in writing, between the parties hereto with respect to the employment of the Employee by the Company and contains all of the covenants and agreements between the parties with respect to that employment.

This Contract is made in two copies, one for each party.

Date: January 2011

_____                                    _____
Stefan Saxberg                                                Kim Davenport
Country Manager
HansaWorld USA, Inc.