**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**KIMBERLEE DAVENPORT**                                                        **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO. 2:12-CV-233-KS-MTP**

**HANSAWORLD USA;**
**HANSAWORLD UK LTD;**
**HANSAWORLD IRELAND; and**
**KARL BOHLIN**                                                                **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendant HansaWorld USA, Inc.'s Motion

to Dismiss or, in the Alternative, to Transfer Venue [30].  Having considered the parties'

submissions, the record and the applicable law, the Court finds that the motion should be

denied.

## I.  BACKGROUND

Plaintiff Kimberlee Davenport asserts several federal and state law claims against

her former employer, HansaWorld USA, Inc. ("HansaWorld"), in this action.  Davenport

was employed by HansaWorld as a sales manager through a written Contract of

Employment (the "Contract") [13-4] from January of 2011 to October of 2012.  Davenport

worked for HansaWorld Ireland, a related entity of HansaWorld, before that time, and the

Contract specifies that Davenport's "period of employment with the Company is counted

from 25 May 2009."  (Contract [13-4] at ¶ 1.2.)  Davenport was also HansaWorld's

corporate secretary prior to her termination.

It appears that HansaWorld is a software company.  HansaWorld was

incorporated in California in July of 2009, and maintains its principal offices in Florida.

HansaWorld was registered to do business in Mississippi from February of 2010 to

December of 2011.  HansaWorld's filings with the Mississippi Secretary of State's

("MSOS") office identify Davenport as its registered agent for service of process in

Mississippi.

Davenport alleges that HansaWorld is the alter ego and subsidiary of Defendants HansaWorld UK Ltd. and HansaWorld Ireland.  Davenport further asserts that the HansaWorld companies are simply namesakes and that the companies share the same board of directors and country manager.

Defendant Karl Bohlin is an adult resident citizen of Sweden.  Davenport contends that Bohlin was her direct and immediate supervisor at all times relevant to her employment with HansaWorld.

On December 13, 2012, Davenport filed suit against HansaWorld and Karl Bohlin in this Court.  (*See* Compl. [1].)  Subject matter jurisdiction is asserted under Title 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).  Davenport alleges that she experienced sexual harassment by officers, directors and employees of HansaWorld, and that Bohlin was the primary perpetrator of the harassment.  Davenport further contends that as one of the few U.S. employees of HansaWorld, she "was often singled out and ridiculed for her national origin as being an 'American.'"  (Compl. [1] at ¶ 15.)  Davenport claims that she was wrongfully terminated after complaining to HansaWorld's board of directors about the purported sexual harassment and about HansaWorld's alleged disregard of U.S. tax and immigration laws pertaining to employee pay.  Based on these and other allegations, the Complaint asserts liability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), for discrimination based on sex and national origin, retaliation, and hostile work environment.  The following supplemental state law claims are also pled:  defamation; malicious interference with employment; intentional and negligent infliction of emotional distress; discharge in violation of public policy; breach of contract; breach of good faith and fair dealing; and negligent supervision and training.

On March 18, 2013, HansaWorld filed its Motion to Dismiss or, in the Alternative, to Transfer Venue [6].  Davenport opposed the motion and moved to strike certain affidavits submitted by HansaWorld in support of its requested relief.  On April 16, 2013, Davenport filed her Amended Complaint [28], joining HansaWorld UK Ltd. and HansaWorld Ireland as Defendants.  No new causes of action are alleged in the Amended Complaint [28].

On April 23, 2013, HansaWorld filed its second Motion to Dismiss or, in the Alternative, to Transfer Venue ("Motion to Dismiss") [30].  On April 30, 2013, the Court denied HansaWorld's original dismissal motion as moot due to the filing of the Amended Complaint [28] and the second dismissal motion.  (*See* Order [34].)  Briefing on the Motion to Dismiss [30] is now complete, with the parties having adopted and incorporated by reference their prior filings on the original dismissal motion and having presented some additional facts and arguments in support of their respective positions.  As of the date of this Order, there is no indication on the Court's docket that service of process has been made on Bohlin, HansaWorld UK Ltd. or HansaWorld Ireland.

## II.  DISCUSSION

HansaWorld's Motion to Dismiss [30] seeks dismissal on the following grounds: (1) Davenport's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because she fails to plausibly allege that HansaWorld is subject to personal jurisdiction in Mississippi; (2) Davenport has failed to establish that HansaWorld is subject to Mississippi's long-arm statute or that it has constitutional minimal contacts with Mississippi, i.e., the Court lacks personal jurisdiction over HansaWorld; and (3) venue is improper in the Southern District of Mississippi.  In the alternative, HansaWorld argues that this action should be transferred to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).  Each of these matters will

be addressed in turn.

### A.   Personal Jurisdiction Viewed Under Rule 12(b)(6)

The Amended Complaint asserts that "[a]t all times relevant Defendant HansaWorld was authorized to do business in the State of Mississippi by way of its Certificate of Authority." (Am. Compl. [28] at ¶ 7.) HansaWorld argues that this "conclusory allegation" fails to state a valid basis for personal jurisdiction over it, and thus, dismissal is warranted under Rule 12(b)(6). (*See* HansaWorld's Mem. in Supp. of Mot. to Dismiss [31] at pp. 7-8.) HansaWorld's argument is not well taken.

Federal Rule of Civil Procedure 8 requires that a pleading stating a claim for relief include "a short and plain statement of the grounds for the court's jurisdiction . . . ." Fed. R. Civ. P. 8(a)(1). Several authorities have found that Rule 8's jurisdictional pleading requirement only pertains to subject matter jurisdiction, and not to personal jurisdiction. *See, e.g.*, *Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87, 88 (2d Cir. 1971) (reversing the district court's dismissal of a complaint that failed to allege personal jurisdiction); *Cox v. Sherman Capital LLC*, No. 1:12cv01654, 2013 WL 1826380, at *1 (S.D. Ind. Apr. 30, 2013) ("[T]he Rules do not require that personal jurisdiction be specifically alleged in the pleadings."); *Polar Molecular Corp. v. Amway Corp.*, No. 1:07cv460, 2007 WL 3473112, at *8 (W.D. Mich. Nov. 14, 2007) (denying the defendants' Rule 12(b)(6) motion to dismiss based on the complaint's failure to allege facts supporting the existence of personal jurisdiction); 5 Charles Alan Wright et al., *Federal Practice and Procedure* § 1206 (3d ed.) ("It should be emphasized that Rule 8(a)(1) only deals with subject matter jurisdiction.").

The absence of any requirement under the Federal Rules that a complaint allege grounds for personal jurisdiction is made clear by Form 7 of the Rules, which only

addresses subject matter jurisdiction in its statement of jurisdiction.  Furthermore, the Fifth Circuit has held that "a court is not restricted to a review of the plaintiff's pleadings" in determining personal jurisdiction, and that this issue of jurisdiction may be resolved through affidavits, oral testimony, depositions or any other form of discovery.  *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000).  Dismissal under Rule 12(b)(6) "is appropriate only if the complaint fails to plead enough facts to state a claim to relief that is plausible on its face."  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citation and internal quotation marks omitted).  Since the Court may look to documents other than Davenport's Complaint in determining personal jurisdiction and since the Rules do not require the Complaint to allege grounds for the Court's exercise of personal jurisdiction, HansaWorld's reliance on Rule 12(b)(6) in support of dismissal is misplaced.

HansaWorld's citation to *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and *Dell, Inc. v. This Old Store, Inc.*, No. H-07-0561, 2007 WL 1958609 (S.D. Tex. July 2, 2007) in support of dismissal is unavailing.  *Ashcroft* says nothing about personal jurisdiction.  With all due respect to the district court in *Dell, Inc.*, this Court is unpersuaded by the footnote discussion resulting in Dell, Inc. being required to file an amended complaint alleging sufficient foundational facts as to subject matter jurisdiction *and* personal jurisdiction.  *See* 2007 WL 1958609, at *1 n.2.  Accordingly, HansaWorld's first basis for dismissal is rejected.

### B.     Personal Jurisdiction on the Merits

"When a federal question case is based upon a federal statute that is silent as to service of process," the district court must determine if the defendant is subject to the jurisdiction of the courts of the forum state.  *Aviles v. Kunkle*, 978 F.2d 201, 203-04 (5th Cir. 1992) (citation omitted).  Title VII, under which Davenport asserts her federal claims,

is such a statute.  *See Willshire v. HK Mgmt.*, No. Civ.A. 3:04cv0090, 2004 WL 2974082, at *2 (N.D. Tex. Dec. 16, 2004) (determining if Texas courts would have jurisdiction over the defendant in an action alleging Title VII violations).  Therefore, this Court must determine if HansaWorld is subject to suit in a Mississippi state court.

A non-resident defendant is amenable to being sued in Mississippi if:  (1) Mississippi's long-arm statute confers jurisdiction over the defendant; and (2) the exercise of personal jurisdiction comports with the requirements of federal due process. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000) (citation omitted). Both inquiries will be addressed since "Mississippi's long-arm statute is not coextensive with due process."  *Id.* at 869 n.7.  The plaintiff must establish personal jurisdiction, but need only present a *prima facie* case to meet his burden.  *See Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).  "This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction."  *Id.*

## 1.    Long-Arm Statute

Mississippi's long-arm statute states in pertinent part:

> Any nonresident . . . who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57.  "The three prongs of the long-arm statute are commonly referred to as the contract prong, the tort prong, and the doing-business prong."  *ITL Int'l Inc. v. Constenla, S.A.*, 669 F.3d 493, 497 (5th Cir. 2012).  HansaWorld argues that the Court's exercise of personal jurisdiction over it is improper under any prong.  Davenport

argues otherwise.  The Court determines that the doing-business prong of the long-arm statute is clearly met.  Thus, no discussion of the tort or contract prong is necessary.

HansaWorld relies on a three-part test in arguing that the "doing-business" prong of Mississippi's long-arm statute is inoperative.  This is "an out-dated test that does not pertain to the current version of . . . [the] statute."  *ITL Int'l Inc.*, 669 F.3d at 498.  Prior to 1991, "the long-arm statute required the cause of action to be connected with the business or work or service in this state."  *Estate of Jones v. Phillips*, 992 So. 2d 1131, 1139 (¶ 14) (Miss. 2008) (citing *Mladinich v. Kohn*, 250 Miss. 138, 147, 164 So. 2d 785, 790 (Miss. 1964)).  This requirement was removed by the Mississippi Legislature in 1991. *Id.*  "As it stands now, the long-arm statute, by its plain terms, applies to any person or corporation performing any character of work in this state."  *Id.*

The following circumstances evidence HansaWorld's business activities in the State of Mississippi:

(i)     HansaWorld was registered to do business in Mississippi from February of 2010 to December of 2011.  (*See* Doc. No. [13-2]; Jay Aff. [30-1] at ¶ 9.)

(ii)    HansaWorld leased an apartment located at 29 Park Place # 1303, Hattiesburg, Mississippi (the "Apartment") from August 25, 2009 to August 31, 2010.  (*See* Davenport Aff. [13-3] at ¶ 10; Jay Aff. [30-1] at ¶ 9.) HansaWorld used the Apartment to house two employees of HW BA S.R.L., its Argentinian sister company.  (*See* Jay Aff. [30-1] at ¶ 9.)  In addition, the Apartment was used as an office for making and receiving

customer support calls and for invoicing U.S. customers. (*See* Davenport Aff. [13-3] at ¶ 10.)[1]

(iii)    HansaWorld funneled thousands of dollars through Davenport's personal banking account at a bank branch located in Hattiesburg during the period of time it did not have a U.S. banking account. (*See* Davenport Aff. [13-3] at ¶ 15.)

(iv)    HansaWorld ordered notepads and stationary from Copy Cats Printing in Hattiesburg. (*See* Doc. No. [14-9].)

(v)    Davenport performed approximately 33% of her work as a sales manager for HansaWorld from Mississippi. (*See* HansaWorld's Reply [21] at p. 9 n.2.)[2] Davenport continued to carry out work for HansaWorld, from her home in Mississippi, after its lease on the Apartment office expired in August of 2010 and after it was administratively dissolved by the MSOS in December of 2011. (*See* Davenport Aff. [13-3] at ¶¶ 20-21; Jay Aff. [30-1] at ¶ 9.)

---

[1] There are some conflicts between the affidavits submitted by Davenport and Stephen Jay, HansaWorld's country manager. Furthermore, Davenport has moved to strike the affidavits executed by Stephen Jay on the basis that they misrepresent facts and are not based upon his personal knowledge. The Court need not rule on Davenport's motions to strike since it must resolve in her "favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2004) (citations omitted).

[2] HansaWorld asserts that Davenport was required to travel outside of Mississippi approximately 66% of the time in meeting her responsibilities as its sales manager for the United States and Canada. (*See* HansaWorld's Mem. in Supp. of Mot. to Dismiss [31] at p. 3.)

As a result, HansaWorld was "doing business" in Mississippi for purposes of establishing personal jurisdiction under section 13-3-57.  The Court next considers whether its assertion of jurisdiction under the long-arm statute violates the Fourteenth Amendment's Due Process Clause.

### 2.      Due Process

Due process requires that a defendant "have certain minimum contacts with . . . [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (citations and internal quotation marks omitted).  The defendant's minimum contacts may give rise to general or specific personal jurisdiction. *See  Luv n' care, Ltd.*, 438 F.3d at 469.  "'Where the plaintiff alleges specific jurisdiction, as here, due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable.'" *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (quoting *ITL Int'l Inc.*, 669 F.3d at 498).[3]

Minimum contacts are established "by actions, or even just a single act, by which

---

[3] Davenport's Response in Opposition [14] to HansaWorld's original dismissal motions asserts that the "court has general jurisdiction over the moving Defendant due to the Defendant's website pursuant to *Mink v. AAAA Development LLC*, 190 F.3d 333 (5th Cir. 1999)."  However, Davenport never expounds on this assertion in her response or motion briefing.  The Court finds that Davenport's unsupported allegation fails to establish a *prima facie* case of general jurisdiction over HansaWorld.  "'[T]he *prima facie* case requirement does not require the court to credit conclusory allegations, even if uncontraverted.'"  *Tellus Operating Group, L.L.C. v. R & D Pipe Co.*, 377 F. Supp. 2d 604, 606 (S.D. Miss. 2005) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)).

the non-resident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (citations and internal quotation marks omitted).  Neither the "unilateral activity of another party or a third person", nor "random, fortuitous, or attenuated contacts" are sufficient.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citations and internal quotation marks omitted).  Yet, isolated or occasional contacts may give rise to specific jurisdiction if the lawsuit arises out of or relates to those contacts. *See Luv n' care, Ltd.*, 438 F.3d at 469.  The crux of the matter "is whether the defendant's conduct shows that it reasonably anticipates being haled into court" in the forum state.  *Vanderbilt Mortgage & Fin., Inc. v. Flores*, 692 F.3d 358, 375 (5th Cir. 2012) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)).

HansaWorld's Mississippi business activities listed in the prior section of this opinion weigh in favor of the Court's exercise of specific jurisdiction, and Hansaworld's attempt at downplaying or negating some of those activities falls short.  HansaWorld contends that it was registered with the MSOS "only for a short period of time and such registration was solely for tax purposes related to the rental of an apartment in Hattiesburg for one of its sister companies . . . ."  (HansaWorld's Reply [21] at p. 7.) HansaWorld also points out that it was administratively dissolved approximately one year prior to Davenport's termination in October of 2012.  First, HansaWorld's administrative dissolution by the MSOS in December of 2011 does not negate the fact that Davenport continued to perform work on its behalf from her home in Mississippi until the time of her termination.  (*See* Davenport Aff. [13-3] at ¶¶ 20-21.)  No assertion is made that

Davenport's actions in Mississippi, carried out before or after HansaWorld's dissolution, were unauthorized.  Second, HansaWorld's specious characterization of the approximate one year and ten months it was registered to do business in Mississippi as "a short period of time" ignores that "[a] single purposeful contact may confer jurisdiction."  *Luv n' care, Ltd.*, 438 F.3d at 470 n.3.  Third, Davenport asserts that the Apartment in Hattiesburg "was used as an office for HansaWorld, making and receiving customer support calls, as well as billing and invoicing for HansaWorld US."  (Davenport Aff. [13-3] at ¶ 10.)  The Court must resolve the conflict in Davenport and HansaWorld's positions regarding the use of the Apartment in favor of Davenport at this stage of the proceedings.  *See Adams*, 364 F.3d at 650.[4]

HansaWorld also deems it important that its alleged business activities in Mississippi all predated Davenport's employment with HansaWorld, which began on January 1, 2011.  This view overlooks the fact that Davenport's period of employment with HansaWorld is counted from May of 2009 under the Contract [13-4], and that Davenport was HansaWorld's corporate secretary and registered agent at least as early as February 15, 2010.  (*See* Doc. No. [13-2].)  Another problem with HansaWorld's narrow focus on this point is that Davenport was conducting business on its behalf in

---

[4] Even overlooking Davenport's affidavit, HansaWorld's assertion that it "did not have any facilities in Mississippi" is a matter of semantics since it admits leasing the Hattiesburg Apartment albeit for a sister company.  (*See* HansaWorld's Mem. in Supp. of Mot. to Dismiss [31] at p. 13.)  HansaWorld's contention that it did not have any employees in Mississippi other than Davenport also appears to fall into the category of form over substance.  Davenport states that Sabrina Dremaine was hired to assist the Hattiesburg office and that Fabiana Villegas, an employee of HansaWorld Buenos Aires, worked as an office manager in Hattiesburg for approximately three months, dealing with HansaWorld's U.S. operations.  (*See* Davenport [13-3] at ¶¶ 11, 17-18.)

Mississippi after the effective date of the Contract by "perform[ing] approximately 33% of her work . . . from her home in Mississippi."  (HansaWorld's Reply [21] at p. 9 n.2.)  Again, no allegation is made that Davenport's Mississippi-based work was unauthorized.  Thus, the Court fails to discern why Davenport's post-January 1, 2011 employment actions should not count toward HansaWorld's business activities in the forum.[5]

The Court is also unswayed by HansaWorld pointing out that the bank account records produced by the Plaintiff evidence an account held by HansaWorld with CitiBank, N.A. in Berkeley, California, as opposed to a Mississippi bank account.  Notwithstanding the physical location of HansaWorld's bank account, it utilized checks and deposit tickets listing its address as 29 Park Pl. #1303, Hattiesburg, Mississippi, 39402, in preprinted text.  (*See* Doc. Nos. [15-4], [15-6].)  It is doubtful that someone drafting or receiving one of these instruments could not reasonably anticipate the possibility of HansaWorld "being haled into court in Mississippi."  *Ainsworth*, 716 F.3d at 179.

Davenport's employment Contract [13-4] with HansaWorld also weighs in favor of the Court's exercise of jurisdiction.  The Contract specifically provides that Davenport's "place of work is the Company's office in **Hattiesburg, USA**."  (Contract [13-4] at ¶ 2.1.)  Although the January, 2011 Contract lists a Florida address for Davenport, she has

---

[5] *See, e.g.*, *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, No. C 12-04634, 2012 WL 5471143, at *8 (N.D. Cal. Nov. 9, 2012) ("On a vicarious liability theory, minimum contacts of nonresident employer's agent are normally imputed to the employer."); *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 722 (D.S.C. 2007) (attributing the actions of a non-resident defendant's agent to the defendant itself for purposes of specific personal jurisdiction); *Alpine Plastics, Inc. v. Erlstedt*, No. Civ.A. 03-1639, 2003 WL 22174288, at *6 (E.D. La. Sept. 17, 2003) ("[T]he Fifth Circuit has long held that the actions of an agent are attributable to a non-resident principal for purposes of establishing personal jurisdiction.").

sworn out that this is clerical error and that she had moved to 70 Bridgefield Turn, Hattiesburg, Mississippi, 39402 with her husband as of August, 2009. (*See* Davenport Aff. [13-3] at ¶ 9; Davenport Suppl. Aff. [35-1] at ¶ 6.) Davenport further states that her home in Florida was foreclosed upon in August, 2010 and that HansaWorld was aware of this development. (*See* Davenport Suppl. Aff. [35-1] at ¶¶ 3-5.) HansaWorld's assertion, "[u]pon information and belief," that Davenport was a Florida resident when she executed the Contract is not convincing. (Jay Aff. [30-1] at ¶ 5.) HansaWorld's February, 2010 filings with the MSOS identify the Bridgefield Turn address as Davenport's address in her capacity as its registered agent and the Hattiesburg Apartment address under her title as corporate secretary. (*See* Doc. No. [13-2].) HansaWorld's position that it "never had an office located at 70 Bridgefield Turn . . . and the word 'office' as used in Section 2.1 of the Employment Contract is a misnomer" is also ineffective. (Jay Aff. [30-1] at ¶ 8.) Davenport has established for purposes of the subject motion that the Hattiesburg Apartment was used as an office for HansaWorld. (*See* Davenport Aff. [13-3] at ¶ 10.) Moreover, HansaWorld has acknowledged that it expected Davenport to perform approximately 33% of her work from Mississippi. (*See* HansaWorld's Reply [21] at p. 9 n.2; Jay Aff. [30-1] at ¶ 7.) Resolving all of these facts in Davenport's favor, the Court finds that HansaWorld knowingly entered into an employment agreement with an individual residing in Mississippi and that it foresaw the individual performing work for it in Mississippi. These circumstances favor Davenport's ability to seek redress from HansaWorld in this Court.[6]

---

[6] *Cf. Stripling*, 234 F.3d at 871-72 (finding that the district court erred in dismissing the suit on personal jurisdiction grounds where the non-resident defendant entered into

The two opinions principally relied on by HansaWorld in its "minimum contacts" analysis are clearly distinguishable.  *See Seymour v. Scorpion Payroll, Ltd.*, No. 2:09cv189, 2010 WL 3239435 (S.D. Miss. Aug. 13, 2010); *Peterson v. Test Int'l, E.C.*, 904 F. Supp. 574 (S.D. Miss. 1995).  There was never any contemplation between the parties in those cases that the respective employment agreements were to "be performed in whole or in part in Mississippi".  *Seymour*, 2010 WL 3239435, at *4; *Peterson*, 904 F. Supp. at 577.  Furthermore, unlike HansaWorld, the defendants in those actions never registered to do business in Mississippi or otherwise availed themselves of the privileges of doing business in the state.

Each of Davenport's claims asserted in this action arises out of or relates to her former employment with HansaWorld.  Since HansaWorld specifically retained Davenport

---

a contract with a Mississippi resident that was to be performed in whole or in part in Mississippi); *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 880-81 (5th Cir. 1993) (affirming the trial court's holding that a foreign employer was subject to jurisdiction in Mississippi since it recruited and hired the plaintiff in Mississippi; even though the plaintiff worked on a drilling rig off the coast of the United Arab Emirates, the foreign employer flew the plaintiff to Mississippi and began paying his medical bills in Mississippi after he was injured); *Hancock Fabrics, Inc. v. Rowdec, LLC*, No. 1:12cv131, 2013 WL 866977, at *4-5 (N.D. Miss. Mar. 7, 2013) (denying the defendant's motion to dismiss where all of its contacts in the district were due to its underlying contract with the plaintiff); *Durham v. Katzman, Wasserman & Bennardini*, 375 F. Supp. 2d 495, 498 (S.D. Miss. 2005) (finding plaintiff's allegations that defendants "entered into a contract while one party was in Mississippi, and that a material portion of the contract was agreed to be performed in Mississippi" pertinent in denying dismissal); *Med. Assurance Co. of Miss. v. Jackson*, 864 F. Supp. 576, 578-80 (S.D. Miss. 1994) (holding that Alabama residents were subject to personal jurisdiction in Mississippi in a suit involving the alleged breach of a settlement agreement that was negotiated via communications between Mississippi and Alabama and that was to be partially performed in Mississippi); *Cirlot Agency, Inc. v. Sunny Delight Beverage Co.*, 85 So. 3d 329, 334 (¶ 27) (Miss. Ct. App. 2012) ("Sunny Delight [over which personal jurisdiction was found to exist] initiated contact with Cirlot in Mississippi, entered into an Agreement with Cirlot to be performed, in whole or in part, in Mississippi and followed that with multiple written and telephone communications with respect to the proposed advertising campaign.").

to work, at least in part, in Mississippi and since Davenport carried out business activities in Mississippi on behalf of HansaWorld through her employment, the Court finds a sufficient "nexus" between Davenport's claims and HansaWorld's Mississippi contacts for the exercise of specific jurisdiction.[7]   HansaWorld may not have anticipated the possibility of it "being haled into court in Mississippi" to defend Davenport's employment related claims. *Ainsworth*, 716 F.3d at 179.  Yet, the Court is far from convinced that HansaWorld's failure to foresee this possibility was reasonable in light of its contacts with the forum state.

The Court next considers whether its exercise of jurisdiction over HansaWorld would be fair and reasonable.  "When a plaintiff makes its *prima facie* case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." *Luv n' care, Ltd.*, 438 F.3d at 473.  The defendant must present a "compelling case" to establish its burden and "[i]t is rare" for an assertion of jurisdiction to be deemed unfair after minimum contacts have been evidenced.  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citations omitted).  Courts balance the following interests in conducting the fairness inquiry and determining whether the exercise of personal jurisdiction comports with fair play and substantial justice:  "the burden on the defendant having to litigate in the forum; the forum state's interests in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies;

---

[7] *Cf. Coats*, 5 F.3d at 883-84; *Hancock Fabrics, Inc.*, 2013 WL 866977, at *4-5; *Billiot v. Turecamo Coastal & Harbor Towing Corp.*, Civ.A. No. 88-2545, 1988 WL 212487, at *3 (E.D. La. Oct. 26, 1988).

and the state's shared interest in furthering fundamental social policies."  *Id.*

HansaWorld's case in opposition to jurisdiction is not that compelling. HansaWorld deems the burden on it litigating in Mississippi significant because "[i]t has no offices, staff, property, customers or any other business interests within the state"; it never "locally advertised or had a single client in Mississippi"; and it "had no way of knowing that [it] would be required to defend a lawsuit . . . in Mississippi."  (HansaWorld's Mem. in Supp. of Mot. to Dismiss [31] at p. 15.)  Pursuant to the foregoing "minimum contacts" analysis, HansaWorld's claim that it had no way of foreseeing that it may be sued in a Mississippi court is not well taken.  Further, the burdens HansaWorld "would potentially face in this court are no more onerous than those that every nonresident defendant faces when litigating outside its home state, and there is no indication that litigating this dispute in . . . [Mississippi] would place . . . [HansaWorld] at a 'severe disadvantage' relative to . . . [Davenport]."  *Commerce Capital, L.P. v. PrivateBank*, No. Civ.A. 3:05cv0700, 2005 WL 1544798, at *4 (N.D. Tex. June 30, 2005).  No evidence has been presented indicating that the inconvenience HansaWorld is likely to encounter in litigating in this forum would be any greater than that faced by Davenport if the situs of the suit was HansaWorld's preferred locale of Florida.  In addition, it appears that interstate and international travel are a routine part of HansaWorld's business, which further militates against its convenience concerns.  *Cf. Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003) (finding that travel from Missouri to Texas should not present a substantial hardship for defendants who routinely engaged in interstate travel).

HansaWorld next asserts "that it has serous doubts as to whether Davenport even presently resides in Mississippi." (HansaWorld's Mem. in Supp. of Mot. to Dismiss [31] at p. 16.) These doubts purportedly negate any contention that Davenport has a substantial interest in obtaining relief in a Mississippi court. HansaWorld presents copies of an IRS notice and Facebook, LinkedIn and Twitter pages, indicating that Davenport lives in McKinney, Texas, in support of this argument. Davenport states the following in response:

> I am still a resident of Mississippi. I was a resident of Mississippi when this suit was filed. I still own my home in Seminary, Mississippi with its homestead exemption. My husband took a job in Texas because of the financial burden caused by HansaWorld. We have rented a home there. I travel back and forth and stay with him for extended periods of time. I do not reside in Texas.

(Davenport Aff. [13-3] at ¶ 19.) Once again, the Court must resolve the parties' inconsistent positions in favor of the exercise of jurisdiction. *See Luv n' care, Ltd.*, 438 F.3d at 469. The Court finds that Mississippi has a substantial interest in the resolution of this suit given Davenport's *prima facie* showing of Mississippi residency. *See Coats*, 5 F.3d at 885 ("Coats is a resident of Mississippi, and Mississippi has a strong 'interest in providing effective means of redress of its residents.'").[8]

Finally, HansaWorld contends that it would be inefficient to allow this case to proceed in light of the fact that it has a separate suit pending against Davenport in Florida state court, "where the company is subject to jurisdiction . . . ." (HansaWorld's Mem. in

---

[8] Davenport's intermittent presence in Texas does not nullify her status as a resident of Mississippi under Mississippi state law. "Residence is an entirely different and more flexible concept [than domicile]. . . . For instance, a person may have multiple residences simultaneously." *Aetna Cas. & Sur. Co. v. Williams*, 623 So. 2d 1005, 1009 (Miss. 1993) (citations omitted).

Supp. of Mot. to Dismiss [31] at p. 16.)  HansaWorld filed suit against Davenport in the

Circuit Court of the Eleventh Judicial Circuit for Miami-Dade County, Florida (the "Florida

Action") on November 13, 2012, approximately one month prior to Davenport filing this

action.  (*See* Doc. No. [30-3].)  Out of the five counts pled in the Florida Action, only

Count V (Civil Remedy for Criminal Practices) appears to have a connection with this

lawsuit.  HansaWorld's central allegation under Count V is that Davenport's "actions of

concocting false and malicious allegations of employment discrimination and income tax

withholding errors or crimes in an effort to extort a severance settlement . . . constitute

the crime of extortion."  (Doc. No. [30-3] at ¶ 45.)  Davenport asserts that counsel for the

parties were in discussions to amicably resolve this matter prior to the filing of the Florida

Action and that HansaWorld filed the Florida Action in anticipation of her Mississippi

lawsuit.  Davenport also posits that the Florida Action is well into discovery.  There is no

indication that Davenport has asserted a counterclaim against HansaWorld in the Florida

Action.

The Court finds that the existence of the Florida Action fails to give rise to

efficiency or fairness concerns warranting dismissal.  Davenport did not file the Florida

Action, so there is nothing inequitable about her initiation and maintenance of this suit in

Mississippi.  HansaWorld has not alleged that dismissal here would result in Davenport's

claims being resolved in the Florida Action.  Also, Davenport asserts that she will refile

her claims in a separate suit in an inconvenient forum (Florida), further prolonging her

right to relief, if the Court dismisses this cause.  It thus appears that the end result of

dismissal would be two separate lawsuits in Florida, encompassing largely dissimilar

claims, proceeding on entirely different schedules.  This result may be more convenient

for HansaWorld, but the Court does not foresee any significant efficiency gains making this the "rare" case where "minimum contacts have been shown" and the assertion of jurisdiction would be "unfair". *Brandt*, 195 F.3d at 215.

The Court's exercise of jurisdiction over HansaWorld is permissible under Mississippi's long-arm statue and would not violate the Fourteenth Amendment's Due Process Clause.  Therefore, HansaWorld's personal jurisdiction-based request for dismissal is refused.

## C.    Dismissal on Venue Grounds

HansaWorld contends that dismissal is required because Davenport cannot establish venue in this district under 28 U.S.C. § 1391(b)(1) or (2).[9]  As to subsection (b)(1), HansaWorld asserts that neither it nor Defendant Bohlin is a resident of Mississippi.  As to subsection (b)(2), HansaWorld argues that the Complaint fails to allege any wrongdoing occurring in Mississippi.

HansaWorld relies on the wrong statute in arguing improper venue.  Congress has adopted specific venue provisions for actions involving alleged violations of Title VII.  *See In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir. 2003).  "'The venue provisions of [42 U.S.C.] § 2000e-5(f)(3) were intended to be the exclusive venue provisions for Title VII employment discrimination actions and . . . the more general provisions of § 1391 are not controlling in such cases.'"  *Allen v. U.S. Dep't of Homeland Sec.*, 514 Fed. Appx. 421,

---

[9] Venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [and/or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property this is the subject of the action is situated . . . ."  28 U.S.C. § 1391(b)(1)-(2).

422 n.3 (5th Cir. 2013) (quoting *Pinson v. Rumsfeld*, 192 Fed. Appx. 811, 817 (11th Cir. 2006)).  No showing has been made that this judicial district falls outside the scope of each potential venue authorized under § 2000e-5(f)(3).[10]  Moreover, it appears that Davenport would have continued to work in this district "but for the alleged unlawful employment practice . . . ."  42 U.S.C. § 2000e-5(f)(3).  Accordingly, HansaWorld's request for dismissal based on the general venue provisions of 28 U.S.C. § 1391(b) is denied.

### D.   Transfer of Venue

HansaWorld's alternative request for a transfer of venue to the Southern District of Florida is made pursuant to 28 U.S.C. § 1404(a).  This statute provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Section 1404(a) applies in Title VII actions because it is specifically referenced under 42 U.S.C. § 2000e-5(f)(3).  *See In re Horseshoe Entm't*, 337 F.3d at 433.

---

[10] "[A]n action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.  For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."  42 U.S.C. § 2000e-5(f)(3).

District courts maintain "'broad discretion'" in determining whether to transfer venue pursuant to § 1404(a). *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (quoting *Balawajder v. Scott* 160 F.3d 1066, 1067 (5th Cir. 1998)). The trial court's first consideration under § 1404(a) is whether the lawsuit "'might have been brought' in the destination venue." *Id.* at 312. Next, the court determines whether good cause has been shown for the transfer. *Id.* at 315. Good cause within the context of § 1404(a) means that the movant must show "that the transferee venue is clearly more convenient" than the plaintiff's choice of forum. *Id.* The Fifth Circuit has adopted the private and public interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947), a *forum non conveniens* decision, for the determination of this issue. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Id.* (citation omitted). The preceding factors are not necessarily exhaustive and no single factor is dispositive. *Id.*

HansaWorld asserts that "the Southern District of Florida is a proper venue for this action . . . ." (HansaWorld's Mem. in Supp. of Mot. to Dismiss [31] at p. 19.) "Davenport agrees that this action COULD have been brought in the Southern District of Florida . . . ." (Davenport's Resp. in Opp. [35] at ¶ 22.) In accordance with the parties' agreement, the Court moves on to consider whether the above-listed public and private interest

factors favor the transfer of this action to the Southern District of Florida.

The private interest factors do not weigh in favor of a transfer. Most of the potential witnesses (Davenport, Kyle Partida, Joshua Davenport, Stephen Jay and Bohlin) identified by the parties reside outside the State of Florida. Further, HansaWorld has failed to specify the subject matter of the expected testimony of its potential witnesses (Mare Raidma, Allan Lessing and Hadi Mansouri) residing in Florida.[11] HansaWorld's contention that compulsory process to secure the testimony of its corporate representative would be more available in the Southern District of Florida than in this District is also unpersuasive. Stephen Jay (HansaWorld's Rule 30(b)(6) corporate representative, custodian of records, and country manager) is an adult resident citizen of Canada, as opposed to Mississippi or Florida. (*See* Jay Suppl. Aff. [30-2] at ¶¶ 1-2.) HansaWorld can compel Stephen Jay to attend any necessary proceedings before this Court by virtue of his employment relationship with the Defendant.[12] Although

---

[11] *Cf. Aultman, Tyner, & Ruffin, Ltd. v. Capital Rubber & Specialty Co.*, No. 2:10cv223, 2011 WL 213471, at *11 (S.D. Miss. Jan. 21, 2011) (denying transfer where the defendant asserted that key witnesses resided in Louisiana, but failed to identify the witnesses by name or describe their anticipated testimony); *Sorrels Steel Co. v. Great Sw. Corp.*, 651 F. Supp. 623, 629 (S.D. Miss. 1986) ("The party seeking a transfer for the convenience of witnesses must clearly specify the key witnesses *and* make a general statement of what their testimony will cover.") (emphasis added; citation omitted).

[12] *Cf. Blume v. Int'l Servs., Inc.*, No. 4:12cv165, 2012 WL 1957419, at *6 (E.D. Mo. May 31, 2012) (finding that the availability of compulsory process was not a significant concern since the defendants' employees were available to provide testimony by virtue of their employment status); *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 259 (S.D.N.Y. 2011) ("Defendants' employees in Europe are within defendants' control and subject to compulsory process."); *Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 711 (S.D. Tex. 2011) (denying the defendants' transfer request because, *inter alia*, they could compel the attendance of any of their employees residing outside of the forum district).

HansaWorld asserts that "the records and documents relevant to Davenport and her claims are located in Florida",[13] the Court presumes that the documentary evidence is easily transferable since its "custodian of records", Stephen Jay, is based in Canada and Mr. Jay has executed an affidavit in Canada partially based on his "review of relevant HansaWorld USA, Inc. business records". (Jay Suppl. Aff. [30-2] at pp. 1, 5.) Davenport's claim that she already has possession of numerous records, such as e-mails and Skype conversations, that will be used in this matter further supports the inference that "the documents related to the litigation should be readily accessible from either" Mississippi or Florida. *White v. Wexford Health Sources, Inc.*, No. 2:09cv161, 2012 WL 3913956, at *3 (N.D. Miss. Sept. 7, 2012) (finding a motion to transfer not well taken).

The aforementioned Florida Action filed by HansaWorld against Davenport fails to tip the balance of the private interest factors in favor of a transfer. HansaWorld argues that the existence of the Florida Action lends support to its requested relief because Davenport will have to conduct discovery in Florida in that action. HansaWorld, nonetheless, concedes that the Florida Action "involves different facts and claims than those at issue in this federal court action." (HansaWorld's Reply in Supp. of Mot. to Dismiss [36] at p. 5.) Further, a transfer of this action to a federal district court in Florida would not alter the fact that the Florida Action is a state court proceeding. Given these realities, it is unlikely that the relocation of this suit will give rise to any significant efficiency benefits associated with related discovery between the two proceedings, overriding Davenport's choice of forum.

---

[13] (HansaWorld's Mem. in Supp. of Mot. to Dismiss [31] at p. 20.)

The public interest factors, as a whole, are inconclusive.  Neither party has presented any current statistics as to the number of civil cases before this Court versus the number of civil actions before the District Judge in the Southern District of Florida to whom this cause would be transferred.  Thus, the Court is unable to resolve the "court congestion" factor in either party's favor.  Davenport is a resident of Mississippi, whereas HansaWorld is incorporated in California and has its principal offices in Florida.  As a result, the "localized interests" factor is neutral or inapplicable.  It appears that Davenport's claims implicate federal law, Mississippi law and New York law.  This Court and the Florida district court are equally capable of applying federal law to Davenport's Title VII claims and looking to New York law with respect to her breach of contract allegation.  This Court's familiarity with Mississippi law in relation to Davenport's remaining claims is not dispositive.

Ultimately, the change of venue to the Southern District of Florida would shift the burden of litigating in an inconvenient forum from the Defendant HansaWorld to the Plaintiff Davenport.  It is well-settled in this Court that "transfer will be refused where it would operate merely to shift inconvenience from one party to the other."  *Aultman, Tyner, & Ruffin, Ltd.*, 2011 WL 213471, at *11.[14]  Accordingly, HansaWorld's § 1404(a) transfer request is not well taken.

## III.  CONCLUSION

---

[14] *Accord Flowserve Corp. v. Midwest Pipe Repair, L.L.C.*, No. 3:05cv1357, 2006 WL 265521, at *5 (N.D. Tex. Feb. 3, 2006); *Vig v. Indianapolis Life Ins. Co.*, 384 F. Supp. 2d 975, 981 (S.D. Miss. 2005); *Jackson*, 864 F. Supp. at 580.

Dismissal of this suit is unwarranted on the grounds presented by HansaWorld. Furthermore, HansaWorld has failed to establish good cause for the transfer of this action to the United States District Court for the Southern District of Florida.

IT IS THEREFORE ORDERED AND ADJUDGED that HansaWorld's Motion to Dismiss [30] is denied.  Counsel for the parties shall contact the chambers of the United States Magistrate Judge Michael T. Parker within seven (7) days of the entry of this Order to schedule a case management conference.

SO ORDERED AND ADJUDGED this the 25th day of September, 2013.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE