**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**KIMBERLEE DAVENPORT**                                              **PLAINTIFF**

**V.**                                         **CIVIL ACTION NO. 2:12-CV-233-KS-MTP**

**HANSAWORLD USA, INC. and**
**HANSAWORLD HOLDING LIMITED**                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendant HansaWorld USA, Inc.'s

("HansaWorld USA") Partial Motion to Dismiss or, in the Alternative, for Summary

Judgment ("Motion to Dismiss") [69], and the Defendant HansaWorld Holding Limited's

("HansaWorld Holding") Motion to Dismiss [94].  Having considered the submissions of

the parties, the record, and the applicable law, the Court finds that both motions should

be granted.

## RELEVANT BACKGROUND

Plaintiff Kimberlee Davenport asserts several federal and state law claims against

her former employer, HansaWorld USA, in this action.  Davenport was employed by

HansaWorld USA as a sales manager through a written Contract of Employment [13-4]

from January of 2011 to October of 2012.  It appears that HansaWorld USA is a software

company.  HansaWorld USA was incorporated in California in July of 2009, and

maintains its principal offices in Florida.  HansaWorld USA was registered to do business

in Mississippi from February of 2010 to December of 2011.  HansaWorld Holding is the

parent company and sole shareholder of HansaWorld USA.  HansaWorld Holding was

organized under the laws of Ireland and maintains its headquarters in that country.

On December 13, 2012, Davenport filed suit against HansaWorld USA and Karl

Bohlin (an adult resident citizen of Sweden) in this Court.  (*See* Compl. [1].)  Subject

matter jurisdiction is asserted under Title 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).  Davenport alleges that she experienced sexual harassment by several individuals, and that Bohlin, her direct and immediate supervisor, was the primary perpetrator of the harassment.  Davenport further contends that as one of the few U.S. employees of HansaWorld USA, she "was often singled out and ridiculed for her national origin as being an 'American.'"  (Compl. [1] at ¶ 15.)  Davenport claims that she was wrongfully terminated after complaining about the purported sexual harassment and about HansaWorld USA's alleged disregard of U.S. tax and immigration laws pertaining to employee pay.  Based on these and other allegations, the Complaint asserts liability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), for discrimination based on sex and national origin, retaliation, and hostile work environment. The following state law claims are also included in the Complaint:  defamation; malicious interference with employment; intentional and negligent infliction of emotional distress; discharge in violation of public policy; breach of contract; breach of good faith and fair dealing; and negligent supervision and training.

On April 16, 2013, Davenport filed her Amended Complaint [28], joining HansaWorld UK Ltd. and HansaWorld Ireland as Defendants.  Through this pleading, Davenport claimed that HansaWorld USA is the alter ego and subsidiary of HansaWorld UK Ltd. and HansaWorld Ireland.  Davenport further asserted that all HansaWorld companies share the same Board of Directors.  No new causes of action were alleged in the Amended Complaint [28].

On April 23, 2013, HansaWorld USA moved to dismiss the Amended Complaint for lack of personal jurisdiction and improper venue.  (*See* Doc. No. [30].)  HansaWorld USA alternatively sought to transfer venue to the U.S. District Court for the Southern District of Florida.  On September 25, 2013, the Court entered its Memorandum Opinion

and Order [45], concluding that dismissal was unwarranted on the grounds urged by HansaWorld USA, and that good cause did not exist for the transfer of this action to the Southern District of Florida.

On October 24, 2013, Davenport's claims against Bohlin, HansaWorld UK Ltd., and HansaWorld Ireland were dismissed with prejudice via an Agreed Order of Dismissal with Prejudice [51].

On January 10, 2014, Davenport filed her Second Amended Complaint [62].  This pleading only names HansaWorld USA and HansaWorld Holding as Defendants. Davenport claims that HansaWorld USA is the alter ego and subsidiary of HansaWorld Holding; that the Defendants share the same Board of Directors and bank accounts; and, that employees "of all HansaWorld companies are fluid and work for and between the HansaWorld sister companies."  (2d Am. Compl. [62] at pp. 2-3.)  The Second Amended Complaint contains the same causes of action as the original Complaint, minus Davenport's claim for malicious interference with employment against Bohlin.

On January 16, 2014, HansaWorld USA filed its Motion to Dismiss [69].  This motion is aimed only at Davenport's Title VII cause of action.  On March 5, 2014, HansaWorld Holding filed its Motion to Dismiss [94].  HansaWorld Holding seeks the dismissal of the Second Amended Complaint [62] on two grounds:  (1) lack of personal jurisdiction and (2) insufficient service of process.  HansaWorld Holding also joins in HansaWorld USA's request for the dismissal of Davenport's Title VII claims.  The subject motions have been fully briefed and the Court is ready to rule.

## DISCUSSION

I.    **HansaWorld USA's Motion to Dismiss [69]**

HansaWorld USA argues that Davenport's Title VII claims fail because it does not have the requisite number of employees to qualify as a statutory "employer."  Under Title

-3-

VII, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calender year . . . ." 42 U.S.C. § 2000e(b). The term "employee" is defined as "an individual employed by an employer," but does not encompass certain government officials. 42 U.S.C. § 2000e(f). "With respect to employment in a foreign country, such term [employee] includes an individual who is a citizen of the United States." *Id.*

HansaWorld USA contends that dismissal is required under Federal Rule of Civil Procedure 12(b)(6) since the Complaint is devoid of any allegations indicating that it is an employer under Title VII. HansaWorld USA alternatively contends that summary judgment is appropriate on this issue under Federal Rule of Civil Procedure 56.

### A.    Federal Rule of Civil Procedure 12(b)(6)

### 1.    Standard of Review

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) ("To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555). A complaint containing mere "labels and conclusions, or a formulaic recitation of the elements" is insufficient. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation and internal quotation marks omitted). Although courts

are to accept all well-pleaded facts as true and view those facts in the light most favorable to the nonmoving party, courts are not required "to accept as true a legal conclusion couched as factual allegation." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted).  Ultimately, the court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."  *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

2.    <strong>Analysis</strong>

The United States Supreme Court has held that § 2000e(b)'s employee numerosity requirement "is an element of a plaintiff's claim for relief, not a jurisdictional issue."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006).    Thus, a defendant charged with employment discrimination cannot wait until after the close of evidence to seek and obtain dismissal based on the ground that it employs fewer than fifteen people.  *See id.* at 504.  There are divergent district court opinions regarding whether a complaint asserting a claim for relief under Title VII must specifically allege the number of employees employed by the defendant in order to survive Rule 12(b)(6) scrutiny.  *Compare Prystawik v. BEGO USA*, No. 13-134 S, 2013 WL 2383680, at *2-3 (D.R.I. May 30, 2013) (granting the defendant's motion to dismiss where the complaint did not allege the number of employees), *and Morrow v. Keystone Builders, Inc.*, No. 2:08-4119-CWH, 2010 WL 3672354, at *8 (D.S.C. Sept. 15, 2010) ("Plaintiff's Amended Complaint fails to state a claim for which relief can be granted under Title VII because the Plaintiff fails to allege facts establishing an essential element of her claim—that her employer employed fifteen or more employees."), *with LeBlanc v. Del. County Bd. of Prison Inspectors*, No. 10-3704, 2011 WL 2745800, at *5 (E.D. Pa.

July 14, 2011) (denying a motion to dismiss with respect to a complaint that presented no specific factual allegations as to the number of individuals employed by the defendant, but pleaded facts allowing the Court to reasonably infer that the numerosity requirement was met), *Powers v. Avondale Baptist Church*, No. 3:06cv363-J-33MCR, 2007 WL 2310782, at *2-3 (M.D. Fla. Aug. 9, 2007) (noting that the employee numerosity requirement is more appropriately considered in the context of summary judgment in denying a Rule 12(b)(6) request for dismissal) (citation omitted), *and Berry v. Lee*, 428 F. Supp. 2d 546, 559 (N.D. Tex. 2006) (denying the defendants' requests for dismissal under Rule 12(b)(6) without prejudice to their ability to move for summary judgment where the complaint did not specifically allege that any defendant employed fifteen or more individuals).

Davenport's Second Amended Complaint [62] does not specify the number of employees employed by HansaWorld USA.  However, this pleading and Davenport's Equal Employment Opportunity Commission Charge of Discrimination ("EEOC Charge") [63] clearly assert that HansaWorld USA employed multiple employees.  (*See* 2d Am. Compl. [62] at ¶¶ 10, 15, 20, 47; EEOC Charge [63] at p. 1.)[1]  Davenport's opposition to the Motion to Dismiss further posits that "at least forty-five (45) employees had an employment relationship with HansaWorld USA."  (Davenport's Mem. in Supp. of Opp. to Mot. to Dismiss [73] at ¶ 41.)

A court should not ordinarily dismiss a claim based on a pleading defect without granting leave to amend.  *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citations omitted).  It thus appears that the grant of HansaWorld USA's Rule 12(b)(6)

---

[1] The Court may consider Davenport's EEOC Charge [63] without running afoul of Rule 12(b)(6) since it is referenced in the Complaint and is a matter of public record. *See Thomas v. Lowe's Home Ctrs., Inc.*, No 13-0779, 2014 WL 545862, at *2 n.5 (W.D. La. Feb. 10, 2014) (citations omitted).

request for dismissal would amount to an exercise in futility and only delay proceedings while Davenport amends the pleadings to assert that HansaWorld USA employed at least forty-five individuals.  The Court finds that the dismissal of Davenport's Title VII cause of action under Rule 12(b)(6) would be improvident under these circumstances, and that the employee numerosity requirement should be addressed under Rule 56.  *Cf. Powers*, 2007 WL 2310782, at *2-3; *Berry*, 428 F. Supp. 2d at 559.[2]

### B.    Federal Rule of Civil Procedure 56

#### 1.    Standard of Review

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted).  The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."  *Id.*  "'An issue is material if its resolution could affect the outcome of the action.'"  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra*, 626

---

[2] Federal Rule of Civil Procedure 12(d) requires that all parties be given a reasonable opportunity to present pertinent materials when a request for dismissal under Rule 12(b)(6) or 12(c) is treated as a motion for summary judgment.  This notice requirement has been satisfied here given HansaWorld USA's request for summary judgment in the alternative, and given the parties' submission of matters outside the pleadings on the subject motion.

F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."  *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is mandatory "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

## 2.    Analysis

HansaWorld USA makes the following pertinent assertions of fact in support of summary judgment:  (i) HansaWorld USA "has never employed more than fifteen (15) total employees for each working day in each of twenty or more calendar weeks during any calendar year"; (ii) "all HansaWorld companies combined have never employed fifteen (15) or more United States citizens for each working day in each of twenty or more calendar weeks in any given calendar year"; and (iii) HansaWorld USA employed a total of thirteen (13) people during the calender years of 2010 through 2012, only six (6) of

whom are U.S. citizens.   (Jay Decl. [69-1] at ¶¶ 3-5.)[3]  HansaWorld USA also makes the legal argument that foreign citizens employed abroad do not count toward § 2000e(b)'s employee numerosity requirement.

Davenport's central factual assertion in opposition to summary judgment is that while she was employed by HansaWorld USA, she "regularly worked with and interacted with . . . [forty-five (45) individuals] who had employment relationships with HansaWorld USA".  (Davenport Aff. [72-1] at ¶ 3.)  Davenport contends HansaWorld USA and HansaWorld Holding are an integrated enterprise[4] that, along with several different HansaWorld branches or companies operating around the globe, employs hundreds of individuals.  At times, Davenport refers to the integrated enterprise as "HansaWorld Group".  Davenport further disputes HansaWorld USA's argument that non-U.S. citizens are excluded from the employee count under § 2000e(b).  As a fall-back argument, Davenport contends the integrated enterprise of HansaWorld Group includes twenty (20) U.S. business partners and that it is reasonable to infer that each business partner employs at least one (1) U.S. citizen.

In rebuttal, HansaWorld USA extensively disputes Davenport's contention that it should be considered an employer of its U.S. business partners' employees. HansaWorld USA also submits the Declaration of Vadims Zuravlovs, "the Chief Legal Advisor for HansaWorld Legal Department," stating that HansaWorld Holding did not have any employees during the calendar years of 2010 through 2012.  (Zuravlovs Decl.

---

[3] Stephen Jay is HansaWorld USA's Country Manager.  (Jay Decl. [69-1] at ¶ 2.)

[4] A court may find two or more entities to constitute an integrated enterprise (i.e., a single employer) for purposes of Title VII upon the consideration of four factors:  "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control."  *Turner*, 476 F.3d at 344 (citing *Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002)).

[81-1] at ¶¶ 2-3.)  HansaWorld USA thus asserts that even if it and HansaWorld Holding are considered to be an integrated enterprise, the employee numerosity requirement under Title VII is not met.  HansaWorld USA nonetheless admits that "there are other HansaWorld entities organized abroad", and concedes, solely for purposes of the Motion to Dismiss [69], "that the Court may assume that all HansaWorld entities are a single enterprise."  (HansaWorld USA's Rebuttal in Supp. of Mot. to Dismiss [91] at p. 22.)  HansaWorld USA also assumes (solely for purposes of the subject motion) that it employs "fifteen (15) or more individuals counting foreign employees employed abroad."  (HansaWorld USA's Rebuttal in Supp. of Mot. to Dismiss [91] at p. 8.)  HansaWorld USA is willing to make these concessions or assumptions based on two positions:  (1) foreign citizens employed abroad do not count in determining whether an entity is an employer under Title VII; and (2) "no HansaWorld company has ever employed fifteen or more U.S. citizens or foreign nationals employed in the U.S. for the requisite period of time under Title VII."  (HansaWorld USA's Rebuttal in Supp. of Mot. to Dismiss [91] at p. 23.)  Therefore, HansaWorld USA argues that the ultimate issue before the Court is whether foreign citizens employed abroad are included under Title VII's definition of employer.

Upon consideration of the parties' arguments (including the arguments asserted in the briefs, but not specifically addressed above), the Court finds that the resolution of HansaWorld USA's request for summary judgment turns on two issues:  (1) whether a foreign citizen employed outside the United States is to be included in the employee count under § 2000e(b); and (2) whether there is sufficient evidence for a reasonable jury to conclude that HansaWorld USA is an employer of its U.S. business partners' employees.  Each issue will be addressed in turn.

      **a.**      **Whether a Foreign Citizen Employed Outside the United States Is to Be Included in the Employee Count Under 42 U.S.C. § 2000e(b)**

There is a split in authority on this issue.  *Compare Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 816 (9th Cir. 2002) ("The fact that some of the employees of the integrated enterprise are not themselves covered by federal anti-discrimination law [because they are non-U.S. citizens employed abroad] does not preclude counting them as employees for the purposes of determining Title VII coverage.") (citing *Morelli v. Cedel*, 141 F.3d 39, 44-45 (2d Cir. 1998)), *Arroyo-Perez v. Demir Group Int'l*, 762 F. Supp. 2d 374, 388 (D.P.R. 2011) (counting the Canadian employees of one entity along with the Florida-based employees of a related entity to determine the employee headcount), *and Wildridge v. IER, Inc.*, 65 F. Supp. 2d 429, 431 (N.D. Tex. 1999) (providing that employees of foreign entities may be factored into the employee calculation), *with Mousa v. Lauda Air Luftfahrt, A.G.*, 258 F. Supp. 2d 1329, 1335-36 (S.D. Fla. 2003) ("[T]he majority of courts that have addressed the issue have found that foreign citizens employed abroad who work exclusively outside of the United States do not count towards the fifteen-employee jurisdictional minimum.") (citing *Iwata v. Stryker Corp.*, 59 F. Supp. 2d 600, 604 (N.D. Tex. 1999); *Greenbaum v. Svenska Handelsbanken*, 979 F. Supp. 973, 983 (S.D.N.Y. 1997); *Minutillo v. Aqua Signal Corp.*, No. 96 C 3529, 1997 WL 156495, at *2 (N.D. Ill. Mar. 31, 1997); *Russell v. Midwest–Werner & Pfleiderer, Inc.*, 955 F. Supp. 114, 115 (D. Kan. 1997); *Kim v. Dial Serv. Int'l, Inc.*, No. 96 Civ. 3327(DLC), 1997 WL 5902, at *3 (S.D.N.Y. Jan. 8, 1997); *Robins v. Max Mara, U.S.A., Inc.*, 914 F. Supp. 1006, 1009 (S.D.N.Y. 1996); *Rao v. Kenya Airways, Ltd.*, No. 94 Civ. 6103(CSH), 1995 WL 366305, at *2 (S.D.N.Y. June 20, 1995)).  The parties have not cited, and the Court has not identified any Fifth Circuit opinion resolving this question.

The Second Circuit's decision in *Morelli*, although an Age Discrimination in Employment Act ("ADEA") case, is the lead authority for the view that foreign employees count under Title VII's employee numerosity requirement.  In *Morelli*, the plaintiff alleged

violations of the ADEA after she was terminated from her position as an assistant to the manager of the defendant bank's New York office.  141 F.3d at 41.  The defendant was a Luxembourg bank and its sole U.S. branch was located in New York.  *Id.*  The district court dismissed the plaintiff's complaint, finding that the ADEA did not apply to the defendant.  *Id.*  Under the ADEA, "[a] business must have at least twenty 'employees' to be an 'employer.'"  *Id.* at 44 (quoting 29 U.S.C. § 630(b)).  The district court limited its employee count to the defendant's New York office, reasoning "that the overseas employees of foreign employers should not be counted because they are not protected by the ADEA."  *Id.*  The Second Circuit disagreed with the district court's reasoning:

> But there is no requirement that an employee be protected by the ADEA to be counted; an enumeration, for the purpose of ADEA coverage of an employer, includes employees under age 40, who are also unprotected, *see* 29 U.S.C. § 631(a).  The nose count of employees relates to the scale of the employer rather than to the extent of protection.

*Id.* at 44-45.  The Second Circuit also referenced several reasons underlying Title VII's employee numerosity requirement (such as, protecting the intimate and personal nature of relationships in small businesses, and the burdens of compliance) since the ADEA was largely modeled on Title VII.  *Id.* at 45.  The Second Circuit found that none of those reasons supported the applicability of the ADEA turning solely on the size of a foreign employer's U.S. operations.  *Id.*  Holding that "employees cannot be ignored merely because they work overseas", the Second Circuit vacated the district court's dismissal of the plaintiff's ADEA cause of action.  *Id.*

In *Kang*, two of the three judges on the Ninth Circuit's panel found *Morelli* persuasive in holding "that Title VII's definition of 'employee' does not prohibit counting the foreign employees of U.S.-controlled corporations for determining coverage."  *Kang*, 296 F.3d at 816.  The Defendant U. Lim of America (which was based in the United States and employed less than seven employees) was found to be covered by Title VII

since it and U. Lim de Mexico (which was located in Mexico and employed between 50-

150 Mexican citizens) were an integrated enterprise.  *Id.* at 814-15.  The majority

considered § 2000e(f)'s reference to U.S. citizens working abroad to be inclusive rather

than limiting:  "The term 'employee' is defined to *include* U.S. citizens employed by U.S.

companies in foreign countries rather than to prohibit counting non-U.S. citizens."  *Id.* at

816.  Circuit Judge Ferdinand Fernandez viewed the statute differently in dissent:

> [T]he definition of employee does not automatically include all persons
> working abroad because, if it did, there would be no reason to expressly
> include United States citizens. Rather, non-United States citizens, who are
> working abroad, are not employees within the meaning of Title VII and cannot
> be counted when we decide if an entity is an employer pursuant to 42 U.S.C.
> § 2000e(b).

*Id.* at 821 (Fernandez, J., dissenting).  Judge Fernandez considered this reasoning

compatible with the Supreme Court's interpretation of 42 U.S.C. § 2000e-1(a), which

exempts certain employees from Title VII coverage.  *Id.*  Because § 2000e-1(a) renders

Title VII inapplicable "'with respect to the employment of aliens outside any State,' it must

apply 'with respect to the employment of aliens inside any State.'"  *Id.* (quoting *Espinoza

Farah Mfg. Co.*, 414 U.S. 86, 95, 94 S. Ct. 334, 38 L. Ed. 2d 287 (1973)).  Further, Judge

Fernandez disagreed with the Second Circuit's examination of the legislative purposes

behind Title VII's employee numerosity requirement in *Morelli*.  "[T]he statute speaks with

enough clarity to permit (nay require) one to stop with its own words, rather than

undertaking to stravage in a wilderness of possible legislative purposes."  *Id.* (citation

omitted).

Aside from Judge Fernandez's dissent, *Mousa v. Lauda Air Luftfahrt, A.G.*,

appears to be the only *judicial* opinion expressly disagreeing with the Second Circuit's

holding in *Morelli*.[5]  Samir Mousa filed suit against Lauda Air Luftfahrt, A.G. ("Lauda Air"),

his former employer, alleging religious discrimination under Title VII and other claims

following the termination of his employment.  *Mousa*, 258 F. Supp. 2d 1332-33.  Lauda

Air employed more than fifteen employees, but the vast majority of those individuals were

foreign citizens who worked exclusively outside the United States.  *Id.* at 1334.  Lauda Air

moved for summary judgment on the basis that it was not an "employer" under Title VII

because it lacked the requisite number of domestic employees.  *Id.* at 1333.  Mousa

primarily relied on *Morelli* in arguing that Lauda Air's foreign employees counted toward

the fifteen-employee threshold.  *Id.* at 1336.  Mousa's reliance on *Morelli* was not well

taken by the district court.

> Importantly, *Morelli* was an ADEA case and was admittedly contrary to every preceding district court decision. *Id.* at 45 n. 1 ("We do not follow the district courts that have concluded-without apparent exception-that only the domestic employees of a foreign employer are counted."). Additionally, the ADEA counts all workers in its definition of "employee" but extends its protection only to those workers who are over 40 years of age, while Title VII's coverage and definition of "employee" appear co-extensive. Otherwise, businesses could avoid being subject to the ADEA simply by failing to hire enough older workers. No such danger exists under Title VII. Moreover, unlike Title VII, the ADEA does not contain a provision excluding from its application "the employment of aliens outside of any State." 42 U.S.C. § 2000e–1(a). The *Morelli* court did not address this statutory language.

> The Court does not find *Morelli* persuasive and finds, based upon Title VII's statutory language and the near unanimity of lower courts, that Title VII's coverage and definition of "employee" are co-extensive. 42 U.S.C. § 2000e(f) supports this reading of the statute. If the definition of "employee" included all individuals working abroad, there would be no reason for Congress to expressly include United States citizens. Accordingly, the Court finds that foreign citizens based abroad who worked exclusively outside of the United States are not included in the fifteen-employee jurisdictional count.

*Id.* at 1337.

---

[5] *But see* Matthew H. Hawes & W. Scott Hardy, *Morelli v. Cedel:  Ignoring Jurisdictional Limits and Outflanking Congress Towards the Internationalization of the ADEA*, 65 U. Pitt. L. Rev. 507 (2004).

In its consideration of the evidence on summary judgment, the district court refined the period of time an employee had to work in the United States before he or she could be factored into the statutory employee count.  The court looked to § 2000e(b) in identifying the time period as "for each working day in each of twenty or more calendar weeks".  *Id.* at 1339.  Thus, Mousa's contention that an employee need only step foot in the United States to be counted was rejected.  *Id.*  Ultimately, the district court granted summary judgment in favor of Lauda Air because Mousa could only point to eight employees that worked in the United States for a sufficient period of time.  *Id.*

The Court finds that *Mousa*, involving Title VII and a foreign employer, squares more firmly with the allegations and claims at issue in this case than does *Morelli* or *Kang*.  *Morelli* involved the ADEA.  The fact that employees under the age of forty receive no protection under the ADEA, but are still counted for purposes of determining employer coverage does not bear on the Title VII claims at issue here.  In *Kang*, a U.S.-based company owned and operated a foreign company.  In this suit, it is undisputed that HansaWorld Holding, a foreign entity, is the parent company and sole shareholder of HansaWorld USA.  Further, Davenport alleges that HansaWorld Holding maintained control over employment decisions for both companies.  This distinction is not without consequence since the anti-discrimination provisions of Title VII are inapplicable "with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer."  42 U.S.C. § 2000e-1(c)(2).

The Court also finds *Mousa*'s holding, "that Title VII's coverage and definition of 'employee' are co-extensive", to be persuasive.  258 F. Supp. 2d at 1337.  As noted above, the definition of "employee" under Title VII specifically includes a U.S. citizen working in a foreign country.  42 U.S.C. § 2000e(f).  In addition, § 2000e-1 renders Title VII inapplicable "to the employment of aliens outside any State . . . ."  42 U.S.C. § 2000e-

1(a).  It is generally accepted that these provisions negate the application of Title VII to non-U.S. citizens working abroad.[6]  The Court discerns no cogent basis for giving effect to these provisions in determining whether an employee is protected by Title VII, while ignoring their existence in determining whether an employer has the requisite number of employees to trigger Title VII coverage.  In contexts outside the realm of foreign employment, courts have found that an individual's ability to obtain relief under Title VII affects whether an employer has the requisite number of employees to implicate Title VII's protections.[7]  The result should be no different with respect to the issue before this Court, especially given the well-established principle that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none."  *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2689, 2878, 177 L. Ed. 2d 535 (2010).  As a result, the

---

[6] *See, e.g.*, *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422 (D.C. Cir. 2005) ("Title VII does not extend extraterritorially to any person who is not an American citizen."); *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 524 n.34 (5th Cir. 2001) ("Title VII does not govern aliens employed outside the United States."); *Iwata*, 59 F. Supp. 2d at 604 ("Non-citizens working outside the United States are not protected because they are not considered employees.").

[7] *See Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 766 (3d  Cir. 2013) ("[T]he definitions of 'employer' and 'employee' set forth in both the ADA and Title VII are relevant in resolving (1) whether an entity qualifies as an 'employer' under Title VII, and (2) whether an individual is an 'employee' who 'may invoke [Title VII's] protections against discrimination[.]'") (quoting *Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 446 n.6, 123 S. Ct. 1673, 155 L. Ed. 2d 615 (2003)), *cert. denied*, 134 S. Ct. 437 (2013); *Smith v. Castaways Family Diner*, 453 F.3d 971, 986 (7th Cir. 2006) ("Characterizing someone as an employer rather than an employee directly affects the reach of Title VII in two different ways[:]"  (1) the individual may be precluded from filing suit since it is thought that only employees are entitled to invoke the statute; and (2) "treating an individual as an employer excludes him or her from the workers who will be counted towards the fifteen-employee threshold . . . .") (citations omitted); *cf. Auld v. Law Offices of Cooper, Beckman & Tuerk*, 981 F.2d 1250, 1992 WL 372949, at *1-2 (4th Cir. Dec. 18, 1992) (finding that partners of the defendant law firm could not be factored into the employee head count since partners are not considered to be employees for purposes of Title VII).

-16-

Court holds that foreign citizens employed outside the United States are excluded from the employee head count under 42 U.S.C. § 2000e(b).  Only those foreign citizens working inside the United States "for each working day in each of twenty or more calendar weeks in the current or preceding year" should be factored into the fifteen-employee threshold.  42 U.S.C. § 2000e(b).

HansaWorld USA asserts that no HansaWorld company has ever employed fifteen or more employees (U.S. citizen or alien) in the United States for the length of time specified under § 2000e(b).  Davenport has failed to evidence facts negating this assertion.  The averment that forty-five "employees worked at different HansaWorld Group branches around the world"[8] falls short of establishing that any employee worked in the United States "for each working day in each of twenty or more calendar weeks . . . ."  42 U.S.C. § 2000e(b).  Davenport's contention that some of these "employees would be physically in the United States from time to time"[9] is also insufficient.  *See Mousa*, 258 F. Supp. 2d at 1339 (rejecting the plaintiff's argument that an employee need only cross the U.S. border to be counted).  The Court further finds Davenport's reliance on the Supplemental Affidavit of Stephen Jay [73-7], previously submitted by HansaWorld USA on the issue of personal jurisdiction, to be unavailing.  The fact that "HW BA S.R.L., an Argentinian sister company of HansaWorld USA, Inc., . . . house[d] *two employees* in Mississippi" for one year does not establish that any HansaWorld company employed *fifteen* or more individuals in the United States for the required length of time.  (Jay Suppl. Aff. [73-7] at ¶ 9) (emphasis added).  Therefore, Davenport's Title VII claims will

---

[8] (Davenport Aff. [72-1] at ¶ 4.)

[9] (Davenport's Mem. in Supp. of Opp. to Mot. to Dismiss [73] at ¶ 56.)

be dismissed due to her failure to meet § 2000e(b)'s employee numerosity requirement unless the issue stated below is resolved in her favor.

### b. Whether There Is Sufficient Evidence for a Reasonable Jury to Conclude that HansaWorld USA Is an Employer of Its U.S. Business Partners' Employees

The Fifth Circuit has utilized two similar, but distinct tests to determine statutory "employer" status when it is alleged that two or more entities share employees:  (1) the single employer test adopted by the Fifth Circuit in *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983); and (2) the "hybrid economic realities/common law control test". *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763-64 (5th Cir. 1997) (citations omitted).  Davenport relies on both tests in arguing that the employees of HansaWorld USA's U.S. business partners count toward meeting Title VII's employee numerosity requirement.  The Court determines that Davenport has failed to evidence a genuine issue for trial under either standard.

### (1)    The *Trevino* Single Employer Test

"[S]uperficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise:  a single employer."  *Trevino*, 701 F.2d at 404. Factors utilized to determine the existence of a single employer "are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  *Id.* (citations omitted).  The Fifth Circuit considers the second factor to be the most important, rephrasing and boiling it down to the question "of 'what entity made the final decisions regarding employment matters related to the person claiming discrimination.'"  *Turner*, 476 F.3d at 344 (quoting *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir. 1986)).

As to the factor of highest importance, there is no allegation, much less proof, that any U.S. business partner of any HansaWorld company made an employment decision,

final or otherwise, pertaining to Davenport.  Further, Stephen Jay avers that "HansaWorld has no authority to hire or fire any of its business partners' employees or make any other employment decisions related to these employees, and these entities have no authority to hire or fire any of HansaWorld's employees, including Plaintiff Davenport."  (Jay Suppl. Decl. [91-1] at ¶ 7.)  Davenport references the Declaration of Ara Darajkian [83-2], who appears to be a former business partner of HansaWorld USA, in support of her argument that HansaWorld USA and its business partners constitute an integrated enterprise.  However, even Ara Darajkian states that "Karl Bohlin, director of HansaWorld, did not have the ability to hire and fire employees of a partner . . . ."  (Darajkian Decl. [83-2] at ¶ 9.)  The continuation of Darajkian's statement—Bohlin "would attempt to throw his weight around and influence the personnel of business partners"—affects nothing.  (Darajkian Decl. [83-2] at ¶ 9.)  The test is "what entity made the final decisions regarding employment matters", not what entity *attempted* to influence personnel decisions. *Turner*, 476 F.3d at 344.  Therefore, the second *Trevino* factor weighs against Davenport.

Upon review of the summary judgment record, it appears that the relationship between a HansaWorld company and a business partner is a typical business arrangement under which the business partner sells HansaWorld software.  Business partners are not prohibited from selling software for other companies.  Business partners receive training from HansaWorld, and regularly update HansaWorld concerning sales.  Also, HansaWorld controls how business partners sell its software products, to whom the products are sold, and how the products are advertised.  Clearly, the operations of HansaWorld and its business partners are related or intertwined for the specific purpose of the sale of software under this arrangement.  However, the Court finds no atypical "interrelation of operations" rendering HansaWorld and its business partners a single employer for purposes of Title VII. *Cooley v. Reckitt Benckiser*, No. 3:11cv404, 2012 WL

8667577, at *3, 4 (S.D. Miss. July 25, 2012) (finding that the existence of a staffing agreement between the defendants did not make them joint employers under Title VII), *aff'd*, 517 Fed. Appx. 298 (5th Cir. 2013).[10]

The remaining "common management . . . [and] common ownership or financial control" factors do not carry enough weight to tip the scales in favor of aggregation.  *See Lusk v. FoxMeyer Health Corp.*, 129 F.3d 773, 777, 778 (5th Cir. 1997) ("Although the appellants produced evidence establishing common management and ownership between NII and its FoxMeyer subsidiaries, these factors alone are insufficient to establish single employer status.").  The weight of these factors aside, Stephen Jay's Supplemental Declaration provides that "HansaWorld does not have any common or mutual management at all with any of its business partners . . . .  There is also no common ownership or financial control, and HansaWorld maintains its own financial records and statements separate and apart from any of its" business partners.  (Jay Suppl. Decl. [91-1] at ¶ 8.)  The Court finds nothing in the record refuting these statements.

Davenport argues that the following information posted on HansaWorld's website shows that HansaWorld considers the employees of its business partners to be part of "HansaWorld Group":  "The group employs around 300 staff in a strong network of daughter companies and distribution partners worldwide."  (Doc. No. [83-3 at ECF p. 6].)  What Davenport or third parties may be led to believe from viewing the preceding

---

[10] In contrast, the Fifth Circuit has found evidence of the interrelation of operations where two entities operated from the same building; one entity used the other for supplies and secretarial support; one entity did not account for the time its employees spent performing work for the other; and, one entity's personnel director responded to an EEOC charge from an individual employed by the other entity.  *See Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 343 (5th Cir. 2005).

-20-

information does not weigh upon the *Trevino* analysis.  *See Tipton v. Northrup Grumman Corp.*, 242 Fed. Appx. 187, 190 (5th Cir. 2007) (Plaintiffs' evidence—including press releases and printouts from NGC's corporate website that purportedly led the plaintiffs to believe their employment extended from NGSS to NGC—failed to establish the existence of "genuine issues of fact regarding whether NGSS and NGC had interrelated operations, centralized control of labor or employment decisions, common management, or common ownership or financial control."); *McLaurin v. Fusco*, 629 F. Supp. 2d 657, 662-63 (S.D. Miss. 2009) (finding the plaintiff's belief that she was employed by DMJ *and* Jenny Craig, based on her review of Jenny Craig documents during the hiring process, to be insufficient to avoid summary judgment in favor of Jenny Craig).  Ultimately, Davenport has failed to come forward with sufficient facts in support of her argument that HansaWorld USA and its U.S. business partners constitute a single employer.

### (2)   The Hybrid Economic Realities/Common Law Control Test

The Fifth Circuit has explained this test as follows:

> In determining whether an employment relationship exists within the meaning of Title VII and the ADEA, we apply a "hybrid economic realities/common law control test." ... The right to control an employee's conduct is the most important component of this test.... When examining the control component, we have focused on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule.... The economic realities component of our test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

*Barrow v. New Orleans Steamship Assoc.*, 10 F.3d 292, 296 (5th Cir. 1994) (citing *Deal v. State Farm County Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118-19 (5th Cir. 1993)).[11]

---

[11] At times, the Fifth Circuit has referenced eleven (11) separate factors pertaining to the economic realities of employment:  "(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3)

The hybrid economic realities/common law control test ("hybrid test") is usually employed to determine if a plaintiff has an employment relationship with one or more defendants.  Here, however, Davenport seeks to show that the employees of third parties to the litigation are employees of HansaWorld USA for purposes of meeting Title VII's employee numerosity requirement.  As pointed out by HansaWorld USA, Davenport's utilization of the hybrid test for this purpose rests on much speculation and conjecture:

> Employing this test to *all* of the employees of *all* twenty companies is impossible in this instance because Plaintiff has not even identified these alleged other employees to allow the Court to engage in such a test.  Indeed, Plaintiff's allegations again surround only the terms of the business contracts between HansaWorld and its business partners (i.e., the companies listed in Exhibit D). . . .  Similarly, there is no allegation anywhere in any of Plaintiff's responses that addresses the rest of Title VII's definition of an employer. Under Title VII, the definition of employer is one who "has fifteen or more employees *for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.*" 42 U.S.C. § 2000e(b) (emphasis supplied).  The only thing Plaintiff does in her responses is ask this Court to assume that the employees of these entities exist and that they meet the above standard, and then utilize pure academic guesswork to engage in an analysis of whether the individuals are employees of HansaWorld.

(HansaWorld USA's Rebuttal in Supp. of Mot. to Dismiss [91] at p. 21.)  HansaWorld USA's point is well taken.  "Mere improbable inferences and unsupported speculation are not proper summary judgment evidence."  *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (citation and internal quotation marks omitted).

---

whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties."  *Bloom v. Bexar County, Tex.*, 130 F.3d 722, 726 n.3 (5th Cir. 1997) (citing *Spirides v. Reinhardt*, 613 F.2d 826, 832 (D.C. Cir. 1979)).

Davenport references her Supplemental Affidavit [83-5] and the Declaration of Ara Darajkian [83-2] in her discussion of the hybrid test.  Davenport states that "I was a partner before I was a salaried employee."  (Davenport Suppl. Aff. [83-5] at ¶ 6.)  As noted above, it appears that Ara Darajkian is a former business partner of HansaWorld. Even assuming *arguendo* that Davenport and Darajkian's former partnerships with HansaWorld are representative of HansaWorld's agreements with the twenty (20) business partners identified in the record, the hybrid test fails to preclude the entry of summary judgment against Davenport.

The Court's preceding analysis as to the *Trevino* single employer test negates any finding that HansaWorld has the right to hire or fire the employees of its business partners.  Furthermore, Davenport's opposition to dismissal provides that the "partner is allowed to set their own work schedule . . . ."  (Doc. No. [83] at p. 8.)  Viewing the facts in the light most favorable to Davenport, it may be reasonably inferred that HansaWorld supervises its business partners with respect to the sale of HansaWorld software. However, it is unreasonable to assume that HansaWorld supervises any and all aspects of the work of its business partners' employees, particularly when the employees may be selling software for a company other than HansaWorld.[12]  The "right to supervise" factor does not override "the right to hire and fire" and "right to set the employee's work schedule" considerations.  *Barrow*, 10 F.3d at 296.  Several economic realties further militate against the existence of an employment relationship between HansaWorld and its business partners.  Business partners are paid on commission.  (*See* Darajkian Decl. [83-2] at ¶ 8; Davenport Suppl. Aff. [83-5] at ¶ 8.)  HansaWorld does not withhold taxes in

---

[12] Each business partner that Davenport contends is likely to employ one (1) U.S. citizen appears to be a company or entity, as opposed to an individual.  (*See* Doc. No. [83-4].)

paying business partners.  (Davenport Suppl. Aff. [83-5] at ¶ 8.)  "HansaWorld does not provide insurance to partners, . . . [or] require the partner to have their own insurance . . . ."  (Doc. No. [83] at p. 8.)  The partnership agreements identify the partners as independent contractors.  (Doc. No. [83] at p. 5.)  No showing has been made that HansaWorld affords its business partners' employees annual leave, or that the employees accumulate retirement benefits from HansaWorld.  On the whole, Davenport "shows little more than a scintilla of evidence upon which a jury could find in h[er] favor" under the hybrid test.  *Thompson v. Zurich Am. Ins. Co.*, 664 F.3d 62, 68 (5th Cir. 2011) (citation and internal quotation marks omitted).

It is the exception rather than the rule that a contractual relationship between two entities for a particular purpose (such as the sale of products) will render one the employer of the other's employees.  Based on the foregoing considerations, the Court concludes that no reasonable jury would find the exception applicable here and deem HansaWorld USA the employer of its U.S. business partners' employees.

### c. Summation

Title 42 U.S.C. § 2000e(b)'s employee numerosity requirement is an element of Davenport's Title VII cause of action.  *See Arbaugh*, 546 U.S. at 516.  Davenport cannot establish that HansaWorld USA employed "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calender year" under § 2000e(b).  Therefore, HansaWorld USA is entitled to judgment as a matter of law on Davenport's Title VII claims.

## II. HansaWorld Holding's Motion to Dismiss [94]

### A. Personal Jurisdiction

A non-resident defendant is amenable to being sued in Mississippi if:  (1) Mississippi's long-arm statute confers jurisdiction over the defendant; and (2) the

exercise of personal jurisdiction comports with the requirements of federal due process. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000) (citation omitted). The plaintiff must establish personal jurisdiction, but need only present a prima facie case to meet his burden.  *See Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).  "This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction."  *Id.*

HansaWorld Holding asserts that it is not subject to Mississippi's long-arm statute and that it lacks sufficient contacts with Mississippi to render jurisdiction over it constitutional.  HansaWorld Holding submits the Declaration of Jennifer O'Carroll [94-1], the Manager for HansaWorld Ireland Ltd., in support of its request for dismissal. O'Carroll's Declaration states, *inter alia*, that HansaWorld Holding has never taken any action in Mississippi; that HansaWorld Holding is not registered to do business in Mississippi; that HansaWorld Holding has never entered into a contract with Davenport or any other individual or entity in Mississippi; that HansaWorld Holding has never owned or leased any property in Mississippi; and that HansaWorld Holding has never advertised in Mississippi.  (O'Carroll Decl. [94-1] at ¶¶ 4-9.)

Davenport's opposition to dismissal does not contest the preceding factual assertions presented by the O'Carroll Declaration.  Further, Davenport does not present any contrary facts showing that HansaWorld Holding itself engaged in any conduct meeting the requirements for the exercise of personal jurisdiction under Mississippi's long-arm statute or the Due Process Clause.  Instead, Davenport argues that HansaWorld USA is the alter ego of HansaWorld Holding, and that the Court's prior personal jurisdiction ruling as to HansaWorld USA also applies to HansaWorld Holding.

-25-

"Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent."  *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) (citing 2 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 4.25[6], at 4-272 (2d ed. 1982)).  Courts presume corporate separateness, although this presumption may be rebutted by clear evidence of a parent corporation asserting sufficient control over its subsidiary to render the subsidiary its agent or alter ego.  *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) (citations omitted).  "The rationale for such an exercise of jurisdiction is that the parent corporation exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." *Hargrave*, 710 F.2d at 1159 (citations and internal quotation marks omitted).  In *Hargrave*, the Fifth Circuit set forth the factors to be utilized in determining whether personal jurisdiction can be exercised over a parent corporation based on the actions of its subsidiary.  The *Hargrave* factors are as follows:

> (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations.

*Dickson Marine Inc.*, 179 F.3d at 339 (citing *Hargrave*, 710 F.2d at 1160).  The plaintiff's prima facie burden of establishing alter ego jurisdiction is less stringent than what is required to establish alter ego liability.  *See, e.g.*, *Hargrave*, 710 F.2d at 1161; *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985).

The first three *Hargrave* factors are not in dispute.  HansaWorld Holding owns

100% of HansaWorld USA's stock.  HansaWorld Holding is headquartered in Ireland, while HansaWorld USA maintains its principal place of business in Florida.  The two companies share some officers and directors.  If the Court's analysis were to stop here, jurisdiction over HansaWorld Holding would be found lacking.  *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 219 (5th Cir. 2000) ("We have said . . . that '100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations.'") (quoting *Hargrave*, 710 F.2d at 1160); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999) ("'[O]ne-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil.'") (quoting *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985)); *Replogle v. Shoreline Transp. of Ala., LLC*, No. 3:11cv83, 2012 WL 4755039, at *3 (S.D. Miss. Oct. 4, 2012) (finding insufficient proof of an alter ego relationship even though parent and subsidiary entities shared headquarters and the same registered agent for service of process, and the single employee of the parent corporation was the manager of the subsidiary); *Samples v. Vanguard Healthcare, LLC*, No. 3:07cv157, 2008 WL 4371371, at *3-4 (N.D. Miss. Sept. 18, 2008) (declining to exercise personal jurisdiction over a parent company that shared officers and headquarters with its wholly owned subsidiary).

Moving on to the disputed *Hargrave* factors, Davenport states (in affidavit form) that "HansaWorld USA did not exercise any corporate formalities."  (Davenport Aff. [98-5] at ¶ 8.)  Davenport posits that HansaWorld USA never held any corporate or board meetings, and thus, the company never approved articles of incorporation or kept any minutes.  (*See* Davenport Aff. [98-5] at ¶¶ 9-11.)  Davenport claims first hand knowledge of HansaWorld USA's corporate structure based on her prior membership on the company's board of directors and former status as the corporate secretary.  (*See*

Davenport Aff. [98-5] at ¶¶ 6-7, 12.)  Davenport also states that she helped incorporate HansaWorld USA while she was a contract employee of HansaWorld Ireland.  (*See* Davenport Aff. [98-5] at ¶ 5.)  Conversely, Jennifer O'Carroll declares that "HansaWorld Holding and HansaWorld USA maintain corporate separateness and observe corporate formalities."  (O'Carroll Decl. [94-1] at ¶ 14.)  O'Carroll also states that Davenport never served on the board of any HansaWorld entity and that Davenport was not privy to HansaWorld USA's board meetings or decisions.  (*See* O'Carroll Suppl. Decl. [100-1] at ¶ 2.)  HansaWorld USA thus argues that Davenport cannot offer competent testimony regarding the corporate formalities of HansaWorld USA's board.[13]

The factual conflict between Davenport and HansaWorld Holding concerning Davenport's status as a former board member of HansaWorld USA must be resolved in Davenport's favor at this stage of the proceedings.  *See Freudensprung v. Offshore Technical Servs.*, 379 F.3d 327, 343 (5th Cir. 2004) (providing that conflicts in jurisdictional facts are to be resolved in the plaintiff's favor) (citation omitted).  Thus, the Court finds Davenport competent to provide testimony regarding HansaWorld USA's corporate inner workings.  The Court further accepts Davenport's statements regarding HansaWorld USA's failure to hold board meetings, keep minutes, and approve controlling documents.  Nonetheless, the record in this case contains filings militating against the conclusion that HansaWorld USA is a sham corporation.  A Certificate of Status issued

---

[13] HansaWorld Holding further argues that Davenport's allegations regarding HansaWorld USA should be disregarded since they concern matters that allegedly existed months before the complaint was filed, and personal jurisdiction is to be determined at the time of the filing of the complaint.  This argument is not well taken. The Fifth Circuit opinion cited by HansaWorld Holding merely holds that events occurring "after the filing of the complaint" are irrelevant for determining jurisdiction. *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990).  No authority has been presented to the Court ruling that circumstances existing weeks, months, or years *prior* to the initiation of an action are to be disregarded for jurisdictional purposes.

by the State of California in December of 2009 indicates that HansaWorld USA "is authorized to exercise all of its powers, rights and privileges in the State of California." (Doc. No. [18-4 at ECF p. 5].)  In addition, HansaWorld USA registered to do business in Mississippi and appointed Davenport as its registered agent for service of process in February of 2010.  (*See* Doc. No. [18-4].)  Davenport also fails to submit evidence indicating that HansaWorld Holding did not follow corporate formalities.  Davenport admits that HansaWorld Holding held board meetings in Europe.  (Davenport Aff. [98-5] at ¶ 12.)  The record further reflects that HansaWorld Holding filed separate annual reports.  (*See* Doc. No. [73-1].)  As a result, the consideration of whether "they [HansaWorld USA and HansaWorld Holding] observe corporate formalities" only slightly weighs in favor of the exercise of personal jurisdiction over HansaWorld Holding. *Dickson Marine Inc.*, 179 F.3d at 339.

The Court resolves the next *Hargrave* factor in the opposite direction.  Jennifer O'Carroll states that "HansaWorld Holding and HansaWorld USA maintain separate accounting systems, bank records, and separate financial statements.  HansaWorld Holding and HansaWorld USA further do not file consolidated tax returns."  (O'Carroll Decl. [94-1] at ¶ 16.)  These averments are supported by the existence of several business records pertaining to HansaWorld USA, as opposed to HansaWorld Holding or HansaWorld USA *and* HansaWorld Holding  (*See* Invoices [14-5]; Checks [13-5], [14-6]; Employment Records [35-2]; HansaWorld USA Banking Records [98-2].)  Davenport's argument that "[b]oth HansaWorld USA and HansaWorld Holding have, or had, the same business departments" is unsupported by the record.  (Davenport's Mem. in Supp. of Resp. in Opp. to Mot. to Dismiss [98] at ¶ 16.)  There is documentation of financing and financial cooperation between HansaWorld USA and other HansaWorld subsidiaries, such as HansaWorld UK Ltd. and HansaWorld Ireland.  (*See* O'Carroll Dep. [98-1] at pp.

-29-

28-30; HansaWorld USA Banking Records [98-2]; Davenport Banking Records [98-3].)

Yet, the relevant entity for purposes of this motion is HansaWorld Holding.  *Cf. Lee v.*

*Ability Ins. Co.*, No. 2:12cv17, 2013 WL 2491067, at *2 (S.D. Miss. June 10, 2013)

(rejecting the plaintiff's argument "that Ability is an alter-ego of ARH," where the bulk of

her evidence pertained "to corporate entities other than ARH").  There is no competent

evidence before the Court showing that each and every HansaWorld subsidiary company

is the alter ego of HansaWorld Holding, or vice versa.  *Cf. Alpine View Co.*, 205 F.3d at

218 (providing that the plaintiffs' prima facie burden was made more difficult due to the

existence of multiple levels of subsidiaries; plaintiffs were required to show corporate

domination at each level).  Furthermore, "[t]he existence of intercorporate loans does not

establish the requisite dominance".  *Id.* at 219 (citation omitted); *see also Adm'rs of the*

*Tulane Educ. Fund v. Ipsen. S.A.*, 450 Fed. Appx. 326, 332 (5th Cir. 2011) (providing that

plaintiffs must show a parent corporation's control over a subsidiary's budget to be so

extensive they essentially became the same entity) (citation omitted); *Gardemal*, 186

F.3d at 593 (finding that financing arrangements, stock ownership, and shared officers

evidenced a typical parent-subsidiary relationship).

Neither Davenport's Affidavit [98-5] nor O'Carroll's Declaration [94-1] is particularly

useful in determining the final "complete authority" factors.  *Hargrave*, 710 F.2d at 1160.

O'Carroll states:

> 17.   HansaWorld Holding, as a mere holding company, does not exercise
> authority over the general policy of HansaWorld USA, and HansaWorld
> USA's policy obligations are completely separate from HansaWorld
> Holding.
>
> 18.   HansaWorld USA exercises complete authority over its daily operations,
> and it runs its own business operations from and in Florida.

(O'Carroll Decl. [94-1] at p. 2.)  Davenport avers:

> 13.   HansaWorld USA took all directives from HansaWorld Holding.

> HansaWorld USA was not autonomous.
>
> 14.     To the best of my knowledge, no other HansaWorld subsidiary company operates as its own company.  All other companies operate the same as HansaWorld USA and take directives directly from the HansaWorld Holding board.

(Davenport Aff. [98-5] at p. 2.)  The Court finds these statements too conclusory to offer enlightenment on the issue of personal jurisdiction.  *Cf. Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) ("Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment.") (citation omitted); *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985) ("[T]he affidavit's statement that Georgia-Pacific is not engaged in the business of selling sawmill trimmers is merely a conclusion which could not shift the summary judgment burden . . . .").

Setting aside the above-quoted averments (and other bare allegations contained in the parties' briefs), there is some evidence that members of HansaWorld Holding's board  were involved in general policy considerations, such as employment matters, at HansaWorld USA.  *See Hargrave*, 710 F.2d at 1160.  It appears that a board member of HansaWorld Holding, Elar Tammeraja, notified Davenport of her termination from HansaWorld USA.  (*See* Doc. No. [98-4].)  Davenport's statement that HansaWorld Holding selected HansaWorld USA's Country Manager,[14] comports with certain immigration filings providing that the "Country Manger oversees the US operations and reports directly to the CEO of the group."  (*See* Doc. No. [101-1 at ECF p. 8].)  Jennifer O'Carroll has testified at deposition that Karl Bohlin, a member of HansaWorld Holding's board,[15] is "the CEO of the company."  (O'Carroll Dep. [98-1] at p. 13.)  It is far from

---

[14] (*See* Davenport Aff. [98-5] at ¶ 17.)

[15] (*See* Doc. No. [73-1] at p. 3.)

-31-

clear, however, that the entity HansaWorld Holding, as opposed to individuals on the

boards of two or more HansaWorld companies, exercised authority over HansaWorld

USA's general policies.  In any event, it is not uncommon for a wholly-owned subsidiary

to cede control over general policies and procedures to its parent owner.  *Cf. United*

*States v. Bestfoods*, 524 U.S. 51, 72, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998)

("[A]ctivities . . . which are consistent with the parent's investor status, such as monitoring

of the subsidiary's performance, supervision of the subsidiary's finance and capital

budget decisions, and articulation of general policies and procedures, should not give

rise to direct liability.") (citation omitted).  Several Fifth Circuit opinions reflect a judicial

unwillingness to equate control over policy matters with the blurring of corporate lines in

determining personal jurisdiction.[16]

There is also evidence of HansaWorld USA exercising authority over its daily

operations.  As referenced above, certain business records reflect that HansaWorld USA

submits separate invoices, maintains its own bank account, writes checks on the

account, receives payments for its own sales, and maintains separate employment

records for its employees.  (*See* Invoices [14-5]; Checks [13-5], [14-6]; Employment

Records [35-2]; HansaWorld USA Banking Records [98-2].)  It is further undisputed that

---

[16] *Ipsen, S.A.*, 450 Fed. Appx at 331 (affirming the district court's dismissal of a
parent corporation where the corporation exercised significant control over its
subsidiary's policies, "but no more than appropriate for a wholly-owned subsidiary");
*Turan v. Universal Plan Invs. Ltd.*, 248 F.3d 1139, 2001 WL 85902, at *3 (5th Cir. Jan.
24, 2001) (finding that the plaintiffs failed to show clear evidence of an alter ego
relationship even though the parent corporation exercised authority over the
subsidiary's general policies and daily operations); *Dalton v. R & W Marine, Inc.*, 897
F.2d 1359, 1363 (5th Cir. 1990) (holding that Midland Enterprises could not be
considered the alter ego of its subsidiaries despite its responsibility for their general
policies); *Hargrave*, 710 F.2d at 1160-61 (The policymaking authority exercised by the
parent company—approving sizeable capital investments, hiring and firing the
subsidiary's officers, and selecting product lines—"was no more than that appropriate
for a sole shareholder of a corporation . . . .").

Davenport contracted with "HansaWorld USA, Inc." for employment. (Contract of Employment [13-4].) Based on the totality of the preceding circumstances, the Court determines that there is an absence of clear evidence indicating that HansaWorld Holding "dominates . . . [HansaWorld USA] to the extent that . . . [HansaWorld USA] has, for practical purposes, surrendered its corporate identity." *Gardemal*, 186 F.3d at 594. Even through the viewpoint of Davenport's prima facie burden, the "corporate separation [at issue here], though perhaps merely formal, [i]s real. It [i]s not pure fiction." *Hargrave*, 710 F.2d at 1160 (quoting *Cannon Mfg. Co. v. Cudahy Packing Co.*, 276 U.S. 333, 337, 45 S. Ct. 250, 69 L. Ed. 634 (1925)).

Davenport has failed to show that HansaWorld Holding itself engaged in any conduct rendering it amenable to being sued in Mississippi. Further, the Court finds that HansaWorld USA's contacts with Mississippi may not be imputed to HansaWorld Holding based on a purported alter ego relationship between the two entities. Therefore, HansaWorld Holding will be dismissed from this cause for lack of personal jurisdiction. The Court need not address HansaWorld Holding's remaining bases for dismissal given this ruling.

### III. Subject Matter Jurisdiction over Davenport's Remaining State Law Claims

HansaWorld USA has posited that "if the district court dismisses the federal cause of action, it will then have discretion to dismiss, without prejudice, the state law actions." (Doc. No. [90] at ¶ 3.) The accuracy of this statement depends on whether the Court has original diversity jurisdiction or supplemental jurisdiction over Davenport's state law claims. Supplemental jurisdiction under 28 U.S.C. § 1367 is discretionary and a court may decline to exercise it when only pendent state causes of action remain in a proceeding. *See St. Germain v. Howard*, 556 F.3d 261, 263-64 (5th Cir. 2009) (citing 28 U.S.C. § 1367(c)). Conversely, when the district court has original diversity "jurisdiction

-33-

over state law claims, the exercise of that jurisdiction is mandatory." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 250 (5th Cir. 2011). There is presently insufficient information before the Court regarding the jurisdictional basis for Davenport's state law claims at the time this suit was filed.[17] Even assuming that § 1367 is the controlling statute, the parties have not briefed whether the Court should exercise its discretion in favor of dismissal or retention. Therefore, the Court will require briefing from the parties on these issues before determining the future course of Davenport's state law claims.

## CONCLUSION

For the foregoing reasons:

IT IS ORDERED AND ADJUDGED that HansaWorld USA, Inc.'s Motion to Dismiss [69] is granted and Plaintiff's Title VII claims are dismissed with prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that HansaWorld Holding Limited's Motion to Dismiss [94] is granted and this Defendant is dismissed from this action without prejudice for lack of personal jurisdiction.

IT IS FURTHER ORDERED AND ADJUDGED that within twenty-one (21) days of the entry of this Order, Plaintiff and HansaWorld USA, Inc. shall each submit a memorandum brief limited to twenty-five (25) pages in length addressing the following issues: (1) whether the Court has subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1332 or § 1367; and (2) if 28 U.S.C. § 1367 is the applicable statute, whether the Court should exercise its discretion to dismiss the state law claims without prejudice.

---

[17] It is well established that subject matter jurisdiction "'depends upon the state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570, 124 S. Ct. 1920, 158 L. Ed. 2d 866 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L. Ed. 154 (1824)).

SO ORDERED AND ADJUDGED this the 20th day of May, 2014.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE