IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

KIMBERLEE DAVENPORT                                                            PLAINTIFF

V.                                            CIVIL ACTION NO. 2:12cv233-KS-MTP

HANSAWORLD USA, INC.                                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendant HansaWorld USA, Inc.'s Motion to Strike [171] and Motion for Summary Judgment [173].  Having considered the submissions of the parties, the record, and the applicable law, the Court finds that the Motion to Strike should be granted and that the Motion for Summary Judgment should be granted in part and denied in part.

## RELEVANT BACKGROUND

Plaintiff Kimberlee Davenport asserts several claims against her former employer, HansaWorld USA, Inc. ("HansaWorld"), in this action.  HansaWorld is a software company.  Davenport was employed by HansaWorld as its sales manager for the United States and Canada prior to her termination.  (*See* Davenport Dep. [173-2] 138:2-5.)  Davenport was also HansaWorld's corporate secretary.  (*See* Davenport Dep. [173-2] 118:8-18.)  Davenport became an employee of HansaWorld Ireland, a related entity of HansaWorld, in May of 2009.  (*See* Davenport Aff. [15-3] at ¶ 5; Davenport Dep. [173-2] 47:8-18, 48:5-12.)  In January of 2011, Davenport executed a written Contract of Employment (the "Contract") [173-4] with HansaWorld.  The Contract has an effective date of January 1, 2011, but also provides that Davenport's "period of employment with the Company is counted from 25 May 2009."  (Contract [173-4] at ¶ 1.2.)  The Contract specifies "an 'at will' relationship":  there is no fixed termination date and either "party may terminate the relationship and the employment with or without notice for any reason

whatsoever." (Contract [173-4] at ¶ 1.4.) HansaWorld terminated Davenport's employment on or about October 18, 2012. (*See* Davenport Dep. [173-2] 152:2-10, 164:2-12.)

On January 10, 2014, Davenport filed her Second Amended Complaint [62] against HansaWorld and HansaWorld Holding Limited ("HHL").[1] Davenport alleges that HansaWorld is the alter ego and subsidiary of HHL. Davenport further claims that she experienced sexual harassment by several individuals, and that Karl Bohlin, her direct and immediate supervisor, was the primary perpetrator of the harassment. Purportedly, Davenport was wrongfully terminated after complaining about the sexual harassment and about HansaWorld's disregard of U.S. tax and immigration laws pertaining to employee pay. Based on these and other allegations, the Complaint asserts the following counts: (1) defamation; (2) intentional and negligent infliction of emotional distress; (3) discharge in violation of public policy; (4) breach of contract; (5) breach of good faith and fair dealing; (6) discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); and (7) negligent supervision and training.

On January 16, 2014, HansaWorld moved for the dismissal of Davenport's Title VII cause of action. (*See* Mot. to Dismiss [69].) On March 5, 2014, HHL sought dismissal for lack of personal jurisdiction and insufficient service of process. (*See* Mot. to Dismiss [94].) The Court subsequently dismissed HHL from the action for lack of personal jurisdiction and dismissed Davenport's Title VII claims. (*See* Mem. Op. & Order [108].)

HansaWorld now seeks summary judgment on Davenport's remaining state law causes of action. (*See* Mot. for SJ [173].) HansaWorld has also moved to strike

---

[1] The procedural history of this litigation is further detailed in the Court's prior orders. (*See* Doc. Nos. [45], [108], [132].)

Davenport's Supplemental Disclosures.  (*See* Mot. to Strike [171].)  The Court has fully considered the subject motions and is ready to rule.

## DISCUSSION

### I.  Motion to Strike [171]

On March 5, 2015, one day before the close of discovery and approximately three months subsequent to the Plaintiff's expert designation deadline, Davenport submitted her Supplemental Disclosures [171-2].  These disclosures identify Garrett D. Gregory, a tax attorney, as a potential witness and an individual likely to possess discoverable information.  Davenport asserts that Gregory is a legal professional, who is familiar with the facts and circumstances regarding her "tax issues as a result of the Defendant's actions and omissions."  (Suppl. Disclosures [171-2] at p. 1.)  Davenport submitted a March 4, 2015 letter prepared by Gregory along with her Supplemental Disclosures.  The letter states, in pertinent part, that Gregory was retained to represent Davenport before the Internal Revenue Service ("IRS") with respect to unfiled tax returns for the years 2010 through 2013; that Davenport "will be subject to significant penalties and interest" due to the delinquent nature of the tax returns; and, that "the overall amount due to the IRS could not be accurately estimated at this time" because, *inter alia*, the IRS has discretion to assess penalties and the underlying amount owed has yet to be determined.  (Suppl. Disclosures [171-2 at ECF p. 5].)

HansaWorld argues that Davenport's last-minute disclosure of Gregory should be stricken to prevent undue prejudice.  "The discovery deadline passed before Defendant could propound written discovery regarding Gregory, much less take Gregory's deposition."  (Def.'s Mem. in Supp. of Mot. to Strike [172] at p. 4.)  HansaWorld further argues that Gregory should be excluded because it appears Davenport intends to use him as an expert witness and she has failed to comply with the rules for expert witness

disclosures.

### A.   Local Uniform Civil Rule ("Local Rule") 37

As an initial matter, Davenport contends that the Motion to Strike should be denied because HansaWorld failed to comply with Local Rule 37.  This rule requires counsel to confer in good faith to attempt resolution of a discovery dispute prior to the filing of a discovery motion.  *See* L.U.Civ.R. 37(a).  The rule also requires a party filing a discovery motion to include a Good Faith Certificate, advising that counsel have attempted to resolve the dispute informally and whether the motion is unopposed by any party.  *See id.*

This Court rejected a substantially similar argument in *Gerald v. University of Southern Mississippi*, No. 2:12cv147, 2013 WL 5592454 (S.D. Miss. Oct. 10, 2013).  In that case, the Defendants moved to strike the Plaintiff's designation of a witness on the grounds of untimeliness and the expert witness disclosure requirements of the Federal Rules of Civil Procedure and the Local Rules.  *See Gerald*, 2013 WL 5592454, at *2.  Plaintiff argued that the Defendants' motion was improper because it lacked a Local Rule 37 Good Faith Certificate.  *See id.*  The Court found as follows with respect to this contention:

> Plaintiff fails to cite, and this Court is unaware of any authority denying a motion to exclude untimely expert opinions on the basis that the moving party failed to comply with Local Rule 37.  Perhaps, the scarcity of such precedent is due to the mandatory nature of the expert witness disclosure requirements of the Federal Rules and Local Rules, and the Court's ability to exclude inadequately disclosed expert opinions *sua sponte* or on a motion.  *See* Fed. R. Civ. P. 37(c)(1); L.U.Civ.R. 26(a)(2)(B).  Perhaps also, it is unrealistic to expect a party to agree to the exclusion of its expert witness from trial in response to an informal request from an opposing party.  In either event, the Local Rules are not jurisdictional and the Court determines that the absence of a Local Rule 37 Good Faith Certificate in support of the Motion to Strike [25] fails to preclude the consideration of Defendants' requested relief at this time.  *See Agee v. Wayne Farms, L.L.C.*, No. 2:07cv1010, 2008 WL 4849669, at *1 (S.D. Miss. Nov. 6, 2008) ("[E]ven if a Good Faith Certificate should have been filed along with the instant motions, this court has the authority and jurisdiction

to consider the motion without it, as the Local Rules are not jurisdictional in nature, and the Court is free to rule on motions not served in precise compliance with them.") (citation and internal quotation marks omitted).

*Id.* at *3 (footnote omitted).

The Court finds it unreasonable to presume that Davenport would have agreed to the exclusion of Gregory had HansaWorld attempted to resolve the issue without a formal motion.  Davenport's "Response in Opposition to Defendant's Motion to Strike" [178] evidences her disagreement with HansaWorld's requested relief.  Thus, for essentially the same reasons stated in *Gerald*, Davenport's Local Rule 37 argument does not justify the denial of HansaWorld's Motion to Strike [171].

**B.    Whether Davenport Timely Disclosed Gregory**

Davenport argues that she was not required to identify Gregory prior to the expiration of her expert designation deadline on December 1, 2014, because he has not been retained as an expert witness and he is expected to provide fact witness testimony at trial.  It is hard to imagine how a tax attorney, specifically retained to represent Davenport before the IRS, could be expected to provide lay witness testimony regarding Davenport's damages.  Nonetheless, the Court finds that Gregory was not timely disclosed whether he is considered a fact witness or expert witness.  Under Federal Rule of Civil Procedure 26(a)(1)(A)(i), Davenport was required to disclose the identity of any individual she intends to use in support of her claims without awaiting a discovery request from HansaWorld.  Federal Rule of Civil Procedure 26(e) requires the "timely" supplementation of initial disclosures.  Fed. R. Civ. P. 26(e)(1)(A).  The purpose of Rule 26(e) is to prevent prejudice and surprise.  *See Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994) (citation omitted).

Davenport's Initial Disclosures were served on October 25, 2013.  (*See* Doc. No. [52].)  Davenport's Supplemental Disclosures, identifying Gregory, were served almost

one year and five months later on March 5, 2015.  There is no indication that
HansaWorld knew or had reason to know of Gregory's existence or involvement in this
case prior to that time.  On the other hand, Davenport essentially controlled the timing of
Gregory's disclosure since she apparently sought out and retained him to represent her
before the IRS.  Further, HansaWorld was deprived of any meaningful opportunity to
conduct discovery regarding Gregory given his disclosure one day before the expiration
of the discovery deadline.  Under these circumstances, the Court finds that HansaWorld
was unduly surprised by Davenport's last-minute supplementation and that the disclosure
of Gregory was untimely even if he is merely considered a fact witness.  *Cf. Bennett v.
GEO Group, Inc.*, No. 4:10cv133, 2011 WL 4625667, at *2 (S.D. Miss. Oct. 3, 2011)
("The purpose of requiring a listing of persons with knowledge, even early on during the
discovery phase . . . is to allow the opposing party to interview or depose them, if desired,
or to conduct other investigation, and to learn the facts before discovery closes.") (citation
omitted).

Davenport's disclosure of Gregory is clearly inadequate if he is considered an
expert witness under Federal Rule of Evidence 702.  Under Federal Rule of Civil
Procedure 26(a)(2)(A), "a party must disclose to the other parties the identity of any
witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703,
or 705."[2]  As to a retained expert witness, a party's disclosure must include a written
report prepared by the witness containing, *inter alia*, "a complete statement of all
opinions the witness will express and the basis and reasons for them; [and] the facts or
data considered by the witness in forming them . . . ."  Fed. R. Civ. P. 26(a)(2)(B).

---

[2] The Fifth Circuit has held that the rule's expert designation requirement applies to
all testifying experts, and not just those individuals specifically retained to provide expert
testimony.  *See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 882 & n.4
(5th Cir. 2004) (citation omitted).

Generally, non-retained expert witnesses are not required to submit written reports.  As to these witnesses, however, a party's designation must state the subject matter on which the witness is expected to present testimony, and include "a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).  Expert disclosures are to be made in the sequence ordered by the court.  *See* Fed. R. Civ. P. 26(a)(2)(D).  Under the Court's Local Rules, absent a finding of just cause, a party's failure to make full expert disclosures by its "expert designation deadline is grounds for prohibiting introduction of that evidence at trial."  L.U.Civ.R. 26(a)(2).  A party seeking to designate an expert without providing full disclosure will not be considered to have met its expert designation deadline and the disclosure may be stricken upon motion or by the court *sua sponte.*  L.U.Civ.R. 26(a)(2)(B); *see also* Fed. R. Civ. P. 37(c)(1).  Davenport's identification of Gregory, without providing full expert disclosure, subsequent to her expert designation deadline runs afoul of the preceding requirements imposed by the Federal Rules of Civil Procedure and Local Rules.

### C.    Whether Gregory Should Be Excluded

Federal Rule of Civil Procedure 37 precludes a party from using at trial a witness or

evidence that was untimely or inadequately disclosed "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  District courts possess broad, considerable discretion in assessing discovery sanctions.  *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir. 1996) (citations omitted).  That discretion, however, is to be guided by the following four factors in determining whether to strike a late-designated witness:  "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."  *Geiserman v.*

*MacDonald*, 893 F.2d 787, 791 (5th Cir.1990) (citation omitted).

Davenport's explanation for identifying Gregory one day before the close of discovery is that she "was not able to locate and pay someone, within her price range, to assist her with these tax issues until March 2, 2015." (Pl.'s Resp. in Opp. to Mot. to Strike [178] at p. 3.)  The Court is unconvinced by this blanket assertion.  No details of Davenport's prior efforts to obtain assistance with her tax issues are provided in her opposition to the subject motion.  Neither the names of any individuals Davenport previously attempted to retain nor the dates she contacted the individuals have been supplied to the Court.  Davenport concedes that she received her tax documents from HansaWorld in 2012.  The Court is unwilling to accept the inference that it took Davenport approximately three years to find someone willing to review her tax problems in the absence of any details regarding her search efforts.  As persuasively argued by HansaWorld, a contrary ruling would allow litigants "to avoid the timely disclosure requirements simply by reciting (without proof) that they were unable to locate an affordable witness within the specified time frame . . . ."  (Def.'s Reply in Supp. of Mot. to Strike [181] at p. 4.)  Davenport's bare justification for Gregory's late disclosure fails to militate against his exclusion.

The "importance of the testimony" factor favors HansaWorld's request for exclusion.  *Geiserman*, 893 F.2d at 791.  First, neither party mentions Gregory in support of or in opposition to summary judgment.  If Gregory's expected testimony were important, the Court would expect the parties to reference it in their briefing on a motion that could dispose of the litigation.  Second, it is not clear what Gregory would specifically testify to at trial.  Davenport asserts that Gregory will testify "as to the costs and damages Davenport has sustained."  (Pl.'s Resp. in Opp. to Mot. to Strike [178] at p. 4.)  Yet, Gregory's March 4, 2015 letter essentially states that it is too early to calculate the

damages and penalties Davenport owes the IRS.  The uncertainty regarding Gregory's expected testimony precludes the Court from labeling it important to any issue in this cause.

The Court finds that HansaWorld would be prejudiced if Gregory testified at trial. As noted above, Gregory was identified the day before the discovery deadline. Therefore, HansaWorld was precluded from deposing Gregory, serving written discovery specifically pertaining to him, or designating any witness in rebuttal.  The Fifth Circuit has approved of the exclusion of a witness under analogous circumstances.  *See Geiserman*, 893 F.2d at 791-92 (rejecting the plaintiff's contention that "a couple weeks" delay in designating an expert witness would not have prejudiced the defendant; the delay "would have disrupted the court's discovery schedule and the opponent's preparation").

Davenport argues that HansaWorld could have asked her questions about Gregory at her deposition on March 6.  However, Davenport fails to assert that she could have provided any deposition testimony regarding Gregory beyond the information furnished in her Supplemental Disclosures and Gregory's March 4 letter.  Gregory's ultimate opinion regarding Davenport's tax problems as of March 4 was that "the overall amount due to the IRS could not be accurately estimated at this time."  (Suppl. Disclosures [171-2 at ECF p. 5].)  Allowing Gregory to provide trial testimony regarding Davenport's costs and damages based on this record would almost certainly result in unfair surprise and undermine a central benefit of the discovery rules, allowing "parties to obtain the fullest possible knowledge of the issues and facts *before trial*."  *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 2d 451 (1947) (emphasis added).

A continuance may cure the aforementioned prejudice.  On the other hand, a continuance would result "in additional delay and increase[ ] the expense of defending the lawsuit."  *Hamburger*, 361 F.3d at 883 (citation omitted).  Further, "a continuance

would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders." *Geiserman*, 893 F.2d at 792 (citing *Bradley v. United States*, 866 F.2d 120, 126 (5th Cir. 1989)).  The Court also notes that neither Davenport nor HansaWorld requests a continuance in connection with Gregory's untimely identification. Based on the totality of the factors listed in *Geiserman*, the Court exercises its discretion to exclude Garrett Gregory and grant the Motion to Strike [171].

## II.   Motion for Summary Judgment [173]

### A.   Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Initially, the movant has "the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  If the movant meets this burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial.  *Id.*  "An issue is material if its resolution could affect the outcome of the action."  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to

-10-

be drawn therefrom in the light most favorable to the nonmoving party."  *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."  *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 322).

### B.    Abandoned Claims

Davenport offers no opposition to HansaWorld's request for summary judgment on her claims for defamation, intentional and negligent infliction of emotional distress, and negligent supervision and training.  The Court finds that Davenport has abandoned or conceded these claims by failing to attempt to show a genuine issue for trial.[3]  Therefore, summary judgment will be granted in favor of HansaWorld on Davenport's allegations of defamation, intentional and negligent infliction of emotional distress, and negligent supervision and training.

### C.    Discharge in Violation of Public Policy

Mississippi adheres to the employment at will doctrine.  *See Senseney v. Miss. Power Co.*, 914 So. 2d 1225, 1228 (¶ 8) (Miss. Ct. App. 2005) (citing *Kelly v. Miss. Valley*

---

[3] *See Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008) (finding that plaintiffs abandoned their claim for tortious breach of contract when their summary judgment response was limited to their bad faith claim); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that the plaintiff's failure to pursue a claim beyond her complaint resulted in abandonment); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.") (citation omitted).

*Gas Co.*, 397 So. 2d 874, 874 (Miss. 1981)).  Where there is no written employment agreement (or where an agreement does not specify the length of employment), the employment relationship is terminable at the will of either party.  *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987).  This "means that an employer may terminate an employee at any time for a good reason, a wrong reason, or no reason at all."  *Senseney*, 914 So. 2d at 1228 (¶ 8) (citation omitted).  In *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993), the Mississippi Supreme Court recognized "a narrow public policy exception to the" doctrine of employment at will in two circumstances:

> 1) an employee who refuses to participate in an illegal act . . . shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer.

626 So. 2d at 607.  Davenport's *McArn* claim implicates the latter circumstance.

An employee's subjective good faith belief that conduct is illegal is insufficient. *See Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 403 (5th Cir. 2005).  The alleged conduct must actually constitute "criminally illegal activity."  *Id.* at 404.  Although *McArn* does not require that a crime already have been committed, it does require that the activities "complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties."  *Hammons v. Fleetwood Homes of Miss., Inc.*, 907 So. 2d 357, 360 (¶ 11) (Miss. Ct. App. 2004) (citations omitted); *see also Howell v. Operations Mgmt. Int'l, Inc.*, 161 F. Supp. 2d 713, 719 (N.D. Miss. 2001) (refusing to expand *McArn* to encompass acts giving rise to civil penalties under OSHA regulations), *aff'd*, 77 Fed. Appx. 248 (5th Cir. 2003).  The criminality of the conduct must be demonstrated via "substantial evidence or citation to binding statutory and/or case law."  *Vaughn v. Carlock Nissan of*

-12-

*Tupelo, Inc.*, No. 1:09cv293, 2011 WL 3651271, at *4 (N.D. Miss. Aug. 18, 2011)

(quoting *Kyle v. Circus Circus Miss., Inc.*, 430 Fed. Appx. 247, 252 (5th Cir. 2011)), *rev'd*

*in part on other grounds*, 553 Fed. Appx. 438 (5th Cir. 2014).  Further, the plaintiff must

show a causal connection between the reporting of illegal acts and his termination.  *See*

*Dismuke v. City of Indianola*, 32 Fed. Appx. 126, 2002 WL 334618, at *4 (5th Cir. Feb.

11, 2002) (citing *Hust v. Forrest Gen. Hosp.*, 762 So. 2d 298, 301-02 (Miss. 2000)).

Davenport argues that HansaWorld refused to withhold and pay Mississippi state

taxes in violation of section 27-7-347 of the Mississippi Code.  This statute states:

> (1) Willful failure to withhold tax or to remit tax to commissioner. Any employer required by Section 27-7-305 to deduct and withhold from wages of employees for the payment of state income taxes who shall willfully fail to deduct and withhold the required amounts from the wages of any employee for any payroll period, or who shall willfully fail to remit the same to the commissioner within the time prescribed by Section 27-7-309, shall, in addition to being liable for such amount, be guilty of a misdemeanor, and, upon conviction therefor, shall be fined not less than One Hundred Dollars ($100.00), nor more than Five Hundred Dollars ($500.00), or imprisoned for not more than six months, or both so fined and imprisoned.
>
> (2) Any person required by this article to file a declaration of estimated tax who shall willfully fail to file the same within the time required by this article, or who shall willfully give any false information in such declaration shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than Twenty-five Dollars ($25.00), nor more than One Hundred Dollars ($100.00).
>
> (3) Any employer who shall willfully fail to furnish an annual withholding statement to the commissioner or to any employee as required in Section 27-7-311 shall be guilty of a misdemeanor and, upon conviction therefor, shall be fined not less than Twenty-five Dollars ($25.00), nor more than Two Hundred Fifty Dollars ($250.00), or imprisoned not less than ten (10) days, nor more than ninety (90) days, or both so fined and imprisoned.

Miss. Code Ann. § 27-7-347.  HansaWorld contends there is a willfulness requirement

under the statute and Davenport has no evidence of HansaWorld willfully violating any

Mississippi tax laws.  HansaWorld makes the related argument that there was no willful

violation of the tax code because it relied on the advice of tax advisors that indicated "the company was not required to withhold Mississippi income taxes from Davenport's wages because the company's payroll was based in Florida."  (Def.'s Mem. in Supp. of Mot. for SJ [174] at p. 14.)

The parties have failed to cite, and the Court has not identified any authority defining "willful" or "willfully" in the context of a purported violation of section 27-7-347. However, the Mississippi Supreme Court has provided the following guidance in reviewing a conviction for tax evasion in violation of section 27-3-79 of the Mississippi Code:[4]

> "'Under the common law, proof of criminal intent is a necessary element in the prosecution of every criminal case, (except those offenses which are merely malum prohibitum)'." *Collins v. City of Hazlehurst*, 709 So.2d 408, 413 (Miss.1997) (*quoting Lee v. State*, 244 Miss. 813, 146 So.2d 736, 738 (Miss.)). We have stated that intent to commit a crime is not required, but rather the mere intent to commit the act is sufficient where certain acts have been enumerated unlawful by statute.

> Nonpayment of income taxes is a statutory violation and is therefore a malum prohibitum crime; therefore, the appellants' state of mind is irrelevant. Rather the relevant point is that the Blues intended not to pay and did not pay their income taxes for 1990 and 1991 (the years at issue here), which violates the statutes of the State of Mississippi.

---

[4] This statute states in pertinent part:  "Any person eligible for the tax amnesty program and who fails to make total payment of the taxes due during the tax amnesty period, or any person who *willfully* attempts in any manner to evade or defeat any tax imposed by the State Tax Commission or the Department of Revenue, or assists in the evading of that tax or the payment thereof, including violations determined under Section 27-3-80, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than One Hundred Thousand Dollars ($100,000.00) and, in the case of a corporation, not more than Five Hundred Thousand Dollars ($500,000.00), or imprisoned not more than five (5) years, or both."  Miss. Code Ann. § 27-3-79(2) (emphasis added).

*Blue v. State*, 716 So. 2d 567, 572 (¶¶ 18-19) (Miss. 1998).  In accordance with this

reasoning, the court rejected the defendants' contention that the State was required to

show subjective bad faith in order to obtain a conviction.  S*ee id.* at 572 (¶ 15); *see also*

*King v. State*, 897 So. 2d 981, 987 (¶¶ 8-9) (Miss. Ct. App. 2005) (upholding the trial

court's refusal to give the defendant's proposed jury instructions regarding the terms

"willfully" and "intent" because criminal intent is not an element of the crime of tax

evasion).

The summary judgment record evidences facts supporting the intent required to

state a violation of Mississippi's tax code, as described in *Blue*.  Davenport requested

that HansaWorld withhold Mississippi state taxes from her wages on several occasions.

(*See* Davenport Dep. [173-2] 132:2-8, 197:18-198:17; HansaWorld 30(b)(6) Dep. [182-1]

44:20-45:4; O'Carroll Dep. [182-2] 15:2-17.)[5]  HansaWorld never withheld any Mississippi

taxes from Davenport's wages.  (*See* Davenport Dep. [173-2] 131:23-132:1, 197:18-

198:17; HansaWorld 30(b)(6) Dep. [182-1] 43:25-44:5, 45:5-21, 47:3-6.)  "It is clear from

*Blue* that while . . . [HansaWorld] may not have intended to violate the applicable statutes

specifically, it is still entirely possible for . . . [HansaWorld] to commit a *malum prohibitum*

crime such as non-payment of income taxes by intending to commit the act alone."

*Salman v. State*, 879 So. 2d 474, 478 (¶¶ 14-15) (Miss. Ct. App. 2004) (finding sufficient

evidence for the jury to convict the defendant for tax evasion and failure to file a return).

At least for purposes of summary judgment, HansaWorld's contention that it was acting

---

[5] Jennifer O'Carroll, an officer of HansaWorld, testified in her individual capacity (*see* Doc. No. [182-2]) and as HansaWorld's Rule 30(b)(6) corporate representative (*see* Doc. No. [182-1]).

on the advice of tax advisors in not withholding Mississippi state taxes fails to negate the existence of a criminal violation.  *See Blue*, 716 So. 2d at 572 (¶¶ 15, 19), 575 (¶ 38) (upholding convictions for tax evasion notwithstanding the defendants' argument that their tax problems resulted from the misguided teachings of a third party); *cf. United States v. Impastato*, 543 F. Supp. 2d 569, 575, 579 (E.D. La. 2008) (rejecting an advice of counsel defense because the subject criminal offenses did not require the Government to show that the defendant specifically intended to violate the law).[6]

HansaWorld's reliance on *Kyle*, 430 Fed. Appx. 247, in support of summary judgment is unavailing.  In *Kyle*, the Fifth Circuit affirmed the dismissal of a *McArn* claim in part because the plaintiff failed to allege or demonstrate that the defendant voluntary and intentionally violated a known duty to withhold taxes from a tip pool.  430 Fed. Appx. at 253.  *Kyle* involved alleged violations of federal tax laws, where the Government must "prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he *voluntarily and intentionally violated* that duty."  *Id.* (quoting *Cheek v. United States*, 498 U.S. 192, 201, 111 S. Ct. 604, 112 L. Ed. 2d 617 (1991)).  Davenport only cites Mississippi state statutes in support of her *McArn* claim.  As discussed above, fact issues for trial exist under the intent standard set forth by the Mississippi Supreme Court for a violation of Mississippi's tax code.  *See Blue*, 716 So. 2d at 572 (¶¶ 18-19).

HansaWorld argues that Davenport's wrongful discharge claim also fails because there is no evidence of a causal connection between her complaints about taxes and

---

[6] HansaWorld's "advise of its tax advisors" defense may be revisited at trial.  (Def.'s Mem. in Supp. of Mot. for SJ [174] at p. 3.)  If HansaWorld wants the jury to consider the issue, it must submit a proposed jury instruction including citations to applicable legal authorities.

termination.  The absence of evidence showing that decision-makers or those in authority were aware of an individual reporting criminal activity prior to his termination has been cited in the dismissal of *McArn* claims.  *See Dismuke*, 2002 WL 334618, at *4 (providing that the plaintiff, a former police offer, failed to present any evidence of the police chief having knowledge of the plaintiff filing a report complaining of illegal acts prior to the plaintiff's discharge);  *Hust*, 762 So. 2d at 301 (¶ 9) ("The record reveals that Hust never reported any illegal activity to anyone in authority at Forrest General."); *cf. Nicholson v. Rotech Healthcare, Inc.*, No. 1:06cv15, 2007 WL 1657412, at *2, 4 (N.D. Miss. June 4, 2007) (granting summary judgment where the plaintiff merely showed that she refused the request of a co-employee, who lacked any managerial authority, to violate Medicare regulations).  Here, there is evidence that Davenport's complaints were received by Jennifer O'Carroll and Stephen Jay prior to her termination.  (*See* Davenport Dep. [173-2] 132:2-8, 197:18-198:17; HansaWorld 30(b)(6) Dep. [182-1] 44:20-45:4; O'Carroll Dep. [182-2] 15:2-17.)  HansaWorld admits that O'Carroll is a corporate "officer" and that Jay is a member of "management."  (Def.'s Mem. in Supp. of Mot. for SJ [174] at pp. 3, 6.) The fact that individuals in positions of authority with HansaWorld learned of Davenport's complaints before her discharge distinguishes this case from *Dismuke* and *Husk*, and could be considered circumstantial evidence of a causal link resulting in termination. "Causation is generally to be determined by the jury" under Mississippi law.  *Busick v. St. John*, 856 So. 2d 304, 307 (¶ 7) (Miss. 2003) (citation omitted).  Given this presumption and the aforementioned facts, Davenport's *McArn* claim will not be dismissed due to a lack of causation at the summary judgment stage.

HansaWorld also argues that Davenport's *McArn* claim is due to be dismissed

-17-

since she cannot prove that the reason she reported the alleged criminal activity is

"*because* it was illegal."  (Def.'s Mem. in Supp. of Mot. for SJ [174] at p. 12.)  This

argument is principally based on the Mississippi Supreme Court's decision in *Jones v.*

*Fluor Daniel Services Corp.*, 959 So. 2d 1044 (Miss. 2007).  In *Jones*, the court found the

exception to employment at will under *McArn* inapplicable since the alleged illegal activity

had nothing to do with the employer's business.  959 So. 2d at 1047 (¶ 13).  The court

further provided that dismissal of the plaintiffs' wrongful discharge claim was appropriate

since there was no evidence of the plaintiffs reporting conduct "*because* it was illegal."

*Id.* at 1048 (¶ 14).  The plaintiffs merely appeared to be bothered by the conduct; they did

not consider it to be criminal in nature.  *Id.*  The Fifth Circuit has relied on this latter

holding as one basis for affirming the grant of summary judgment on a *McArn* claim.  *See*

*Crawford v. Bannum Place of Tupelo*, 556 Fed. Appx. 279 (5th Cir. 2014).  The Fifth

Circuit found that under *Jones*, only conduct "a plaintiff reported because he believed it to

be illegal" falls within the scope "of Mississippi's narrow public policy exception."

*Crawford*, 556 Fed. Appx. at 285.

    *Jones* does not mandate a grant of summary judgment in HansaWorld's favor.

Davenport provided the following salient deposition testimony in the context of describing

her complaints about HansaWorld not withholding taxes:

(i)     "The other thing is because I lived in the state of Mississippi, the State of

        Mississippi requires us to pay income tax for the state."  (Davenport Dep.

        [173-2] 131:18-20.)

(ii)    "[A]s far as I knew, from being a bookkeeper for many years, where the

        employee resides, you do have to pay income tax based on where they

live."  (Davenport Dep. [173-2] 132:15-17.)

(iii)    "You're [HansaWorld] supposed to be withholding my Mississippi state
         income tax. . . .  I know they say they're not supposed to, but they are."
         (Davenport Dep. [173-2] 198:4-6.)

Viewing this evidence in Davenport's favor, a reasonable jury could draw the inference
that Davenport believed HansaWorld's failure to withhold state income taxes was illegal
when she complained about the same.  Moreover, issues of motivation and intent are
usually resolved at trial and not upon summary judgment.  *See, e.g.*, *Waltman v. Int'l
Paper Co.*, 875 F.2d 468, 482 (5th Cir. 1989) (providing that determinations regarding
motivation and intent, which often involve circumstantial evidence and the drawing of
complicated inferences, are "peculiarly within the province of the factfinder"); *Jordan v.
Wilson*, 5 So. 3d 442, 450 (¶ 27) (Miss. Ct. App. 2008) ("It is well settled that intent is a
question of fact for the jury . . . .").  A jury, with its ability to listen to live testimony, weigh
evidence, and make credibility determinations, would be in a better position than the
Court to decide if Davenport complained about HansaWorld not withholding taxes from
her wages *because* she thought the practice was illegal.  *See EEOC v. Chevron Phillips
Chem. Co.*, 570 F.3d 606, 612 n.3 (5th Cir. 2009) (noting the well-established prohibition
against a district court making credibility determinations or weighing evidence in ruling on
summary judgment) (citation omitted).

    HansaWorld's reliance on the doctrine of collateral estoppel fails to alter the
preceding ruling.  According to HansaWorld, Davenport is collaterally estopped from
claiming that she reported illegal activity "*because* it was illegal" in light of a judgment
rendered in a Florida state court action (the "Florida Action").  (Def.'s Mem. in Supp. of

Mot. for SJ [174] at pp. 15-16.) Following Davenport's termination, HansaWorld sued Davenport for conversion, relating to her use of a company car, and extortion, claiming that she concocted false allegations of employment discrimination and income tax withholding errors in order to extort a severance settlement. A jury returned a verdict for HansaWorld and against Davenport on these claims. (*See* Final Judgment [173-1].) HansaWorld argues that the verdict in the Florida Action precludes Davenport from claiming whistleblower status since the jury found she threatened to report the subject tax issues "to extort a severance payment from the company, not because the alleged practices were illegal." (Def.'s Reply Brief in Supp. of SJ [187] at p. 6.)

"In determining the preclusive effect of a prior state court judgment, federal courts must apply the law of the state from which the judgment emerged." *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096-97 (5th Cir. 1995) (citing *J.M. Muniz, Inc. v. Mercantile Tex. Credit Corp.*, 833 F.2d 541, 543 (5th Cir. 1987)). Under Florida law, collateral estoppel precludes the relitigation of an identical issue that was actually decided in a prior proceeding between the same parties. *See Marquardt v. State*, 156 So. 3d 464, 481 (Fla. 2015) (citation omitted). Based on the limited materials pertaining to the Florida Action before the Court, it appears that the jury's extortion finding was premised on a letter Davenport's former legal counsel submitted to HansaWorld regarding the possibility of settlement. The letter is dated *October 23, 2012*, and states, in pertinent part, that in exchange for $250,000.00, Davenport would release her claims and sign a non-disclosure agreement that would ensure HansaWorld's improper conduct, regarding its failure to withhold payroll taxes and other matters, remained confidential. (*See* Doc. No. [173-13].) The subject letter post-dates HansaWorld's termination of Davenport's

employment on or about *October 18, 2012*.  (*See* Davenport Dep. [173-2] 152:2-10,

164:2-12.)  Therefore, the letter has no bearing on the *McArn* issue before this Court,

*viz.*, whether Davenport was terminated because of her prior complaints to Jennifer

O'Carroll and Stephen Jay concerning HansaWorld's failure to withhold Mississippi taxes.

HansaWorld has failed to show that Davenport's motivation for these prior complaints

was actually litigated and decided in the Florida Action.  Further, HansaWorld concedes

that the legality of its tax withholding practices "was not decided" in that litigation.  (Def.'s

Reply Brief in Supp. of SJ [187] at p. 5.)  HansaWorld's reliance on the defense of

collateral estoppel falters as a result.[7]

In sum, HansaWorld's request for summary judgment on Davenport's wrongful

discharge claim under *McArn* is denied due to the existence of genuine issues of material

fact.

### D.    Miscellaneous Claim or Contention

In her briefing in opposition to summary judgment, Davenport asserts the following

argument:  "Even assuming, *arguendo*, that the conduct complained of by Ms. Davenport

is not criminal, Defendant is liable for all amounts which the Defendant failed to withhold

and pay on behalf of Ms. Davenport."  (Pl.'s Resp. in Opp. to Mot. for SJ [182] at p. 14.)

It seems that Davenport contends HansaWorld is liable to her for any taxes it previously

failed to withhold from her wages regardless of the viability of her *McArn* claim.  If that is

--------

[7] Collateral estoppel is considered an affirmative defense under Florida law.  *See, e.g.*, Fla. R. Civ. P. 1.110(d); *Garnac Grain Co. v. Mejia*, 962 So. 2d 408, 410-11 (Fla. Dist. Ct. App. 2007).  As the party bearing the burden of proof on this defense at trial, HansaWorld "must establish beyond peradventure *all* of . . . [its] essential elements" in order to obtain summary judgment.  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)*.*

indeed Davenport's contention, the Court rejects it on several grounds.

First, the statutes cited by Davenport require the payment of taxes to the Mississippi State Tax Commission, as opposed to any private individual.  *See* Miss. Code Ann. §§ 27-7-5, -307.  Second, Davenport will not be entitled to any tort damages associated with HansaWorld's failure to withhold taxes if her *McArn* claim fails because the subject conduct is deemed to be non-criminal in nature.  *See Cmty. Care Ctr. of Aberdeen v. Barrentine*, 160 So. 3d 216, 220 (¶ 13 (Miss. 2015) ("*McArn* wrongful-discharge claims are independent tort actions . . . .").  Third, to the extent Davenport is attempting to assert a new theory of recovery, it is too late in the litigation for her to raise additional claims.  *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (providing that a claim raised for the first time in opposition to a summary judgment motion is improper) (citation omitted).  Davenport's above-stated claim or contention fails to constitute an independent basis for recovery against HansaWorld for each of these reasons.

E.    **Breach of Contract**[8]

_____

[8] The Contract between Davenport and HansaWorld includes the following choice of law provision:  "It is intended that this Contract be valid and enforceable under the laws of New York, and that the laws of this state shall govern the Contract's interpretation." (Contract [173-4] at ¶ 14.4.)  However, neither Davenport nor HansaWorld cites any New York legal authority in support of or in opposition to summary judgment.  The parties rely on Mississippi precedent with respect to Davenport's contractual claims. The Court has independently examined New York law and found no outcome determinative difference between it and Mississippi law with respect to Davenport's breach of contract claims.  Given this circumstance and the lack of any dispute between the parties regarding the controlling substantive law, the Court will apply Mississippi legal authorities in considering the subject cause of action.  *Cf. Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 558-59 (5th Cir. 2011) (providing that a choice of law

Davenport claims that HansaWorld breached the Contract [173-4] by failing to pay her accrued vacation time and wages for September and October of 2012.  A plaintiff asserting a breach of contract claim has the burden of proving "by a preponderance of the evidence: 1. the existence of a valid and binding contract; and 2. that the defendant has broken, or breached it . . . ."  *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224-25 (¶ 10) (Miss. 2012) (citation omitted).  Monetary damages are not an element of a breach of contract claim.  *Id.* at 1225 (¶ 11).  Instead, damages are a remedy for the breach.  *Id.*

The first element of Davenport's breach of contract claim is met since neither party disputes the validity of the Contract [173-4].  With respect to the second element, the Contract provides that Davenport was to be paid a base salary of $5,000 per month, and was entitled to four (4) weeks of paid vacation time each year.  (*See* Contract [173-4] at ¶¶ 4.1, 7.)  There is also no dispute regarding HansaWorld's failure to pay Davenport for any unused vacation time upon her termination or her salary in September and October of 2012.  HansaWorld argues that it was not obligated to pay Davenport for these months since she was required to work 160 hours each month and, by Davenport's own calculations, she only worked 64.6 hours in September and 60 hours in October.  HansaWorld further contends Davenport only offers self-serving allegations in support of the claim that she had unused vacation time when she was terminated.  The Court finds that HansaWorld's arguments do not conclusively negate Davenport's ability to establish a breach of the Contract.

---

analysis is unnecessary where the application of two bodies of law leads to the same result) (citation omitted).

The following rules of law are pertinent to HansaWorld's position regarding its failure to pay Davenport's monthly salary:

> "[A]s a general rule, a party to a contract may break it by renouncing his liabilities under it; by rendering performance impossible; or by totally or partially failing to perform his agreement or undertaking." *Matheney v. McClain*, 248 Miss. 842, 161 So.2d 516, 519 (Miss.1964). "When either party to a contract fails to perform any of his terms, the contract has been broken." *Matheney*, 161 So.2d at 519-20 (citation omitted). "[A] party's material breach of a bilateral contract excuses further performance by the other party." *Cinque Bambini*, 863 So.2d at 1044, *citing Gulf South Capital Corp. v. Brown*, 183 So.2d 802, 804-05 (Miss.1966). Mississippi law is well established that termination of a contract is an "extreme remedy" and will only be allowed for a material breach. "A breach is material when there 'is a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats its purpose,' or when 'the breach of the contract is such that upon a reasonable construction of the contract, it is shown that the parties considered the breach as vital to the existence of the contract." ' *UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So.2d 746, 756 (Miss.1987). "The issue of whether a breach was material is a question of fact." *Cinque Bambini*, at 1044, *citing UHS-Qualicare, Inc.*, 525 So.2d at 756 (Miss.1987).

*Miss. Power Co. v. Water & Power Techs., Inc.*, No. 1:03cv763, 2006 WL 3457026, at *7 (S.D. Miss. Nov. 28, 2006).  There is insufficient information before the Court for it to decide the fact issue of whether Davenport's failure to work 160 hours in October or September of 2012 constituted a material breach of contract and excused HansaWorld from paying Davenport any salary for these months.  The fact question of whether Davenport had any accrued or unused vacation time upon her termination is also better left for trial.  Accordingly, HansaWorld is not entitled to summary judgment as a matter of law on Davenport's above-discussed breach of contract allegations.

### F.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Davenport argues that by refusing to pay "her salaried wages and unused vacation time, the Defendant has also breached the duty of good faith and fair dealing,

-24-

which is inherent in every contract." (Pl.'s Resp. in Opp. to Mot. for SJ [182] at p. 19.)
This claim fails because the Mississippi Supreme Court does not recognize the existence
of an implied covenant of good faith and fair dealing in the context of an at-will
employment relationship, such as the prior relationship between Davenport and
HansaWorld.[9]  "This Court has held that there is no implied duty of good faith and fair
dealing in employment contracts." *Cothern v. Vickers, Inc.*, 759 So. 2d 1241, 1248 (¶ 16)
(Miss. 2000) (citations omitted); *see also Young v. N. Miss. Med. Ctr.*, 783 So. 2d 661,
663 (¶ 9) (Miss. 2001) (providing that a claim for breach of an implied duty arising from
at-will employment is not legally cognizable in Mississippi notwithstanding numerous
cases stating that all contracts give rise to an implied duty).  Recognizing the existence of
an implied covenant of good faith would run counter to the rule "that an employer may
validly fire [an employee] for a good, bad, or no reason" at all.  *Miranda v. Wesley Health
Sys., LLC*, 949 So. 2d 63, 68 (¶ 19) (Miss. Ct. App. 2006) (citing *Harris v. Miss. Valley
State Univ.*, 873 So. 2d 970, 986 (Miss. 2004)).

        In the alternative, summary judgment is appropriate because Davenport has failed
to present any evidence of a breach of the implied covenant.  "The breach of good faith is
bad faith characterized by some conduct which violates standards of decency, fairness or
reasonableness."  *Harris*, 873 So. 2d at 987 (¶ 51) (quoting *Cenac v. Murry*, 609 So. 2d
1257, 1272 (Miss. 1992)).  Bad judgment or negligence does not constitute bad faith.  *Id.*
(citation omitted).  Rather, "bad faith implies some conscious wrongdoing because of
dishonest purpose or moral obliquity."  *Lippincott v. Miss. Bureau of Narcotics*, 856 So.

---

        [9] Both parties also rely on Mississippi law in their summary judgment briefing on this
claim.

2d 465, 468 (¶ 8) (Miss. Ct. App. 2003) (citation and internal quotation marks omitted).

Davenport's bare argument that HansaWorld "has no good faith reason for breaching the

contract" is plainly insufficient.  (Pl.'s Resp. in Opp. to Mot. for SJ [182] at p. 21.)  It is well

settled that arguments of counsel and unsworn allegations in the pleadings fail to

preclude summary judgment. *See, e.g.*, *Nettles v. Travelers Prop. Cas. Ins. Co.*, 375 F.

Supp. 2d 489, 492 (S.D. Miss. 2005); *Roberts v. Walthall County Gen. Hosp.*, 96 F.

Supp. 2d 559, 561 (S.D. Miss. 2000), *aff'd*, 240 F.3d 1075 (5th Cir. 2000).  Thus, this

cause of action will be dismissed.

###    G.    Summation

HansaWorld is entitled to summary judgment on all of Davenport's claims, except

for the above-referenced breach of contract allegations and the contention that

Davenport was discharged in violation of the public policy exception recognized in

*McArn*, 626 So. 2d 603.  The Court has fully considered all of the parties' arguments and

positions in reaching this ruling.  Those matters not specifically addressed above fail to

alter the summary judgment outcome.

### <u>CONCLUSION</u>

For the foregoing reasons:

IT IS ORDERED AND ADJUDGED that HansaWorld USA, Inc.'s Motion to Strike

[171] is granted and Garrett D. Gregory will be precluded from testifying as a witness at

the trial of this cause.

IT IS FURTHER ORDERED AND ADJUDGED that HansaWorld USA, Inc.'s

Motion for Summary Judgment [173] is granted in part and denied in part.  The following

of the Plaintiff's claims are dismissed with prejudice:  defamation, intentional and

-26-

negligent infliction of emotional distress, breach of good faith and fair dealing, and negligent supervision and training.  Plaintiff's claims for wrongful discharge in violation of public policy and breach of contract regarding the non-payment of salary and unused vacation time remain pending for trial.

SO ORDERED AND ADJUDGED this the 24th day of June, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE